Earl GORE et al *v.* Wallace EMERSON
and Henry WILKINSON

77-64                                        557 S.W. 2d 880

Opinion delivered November 28, 1977
(In Banc)

*Dane & Felton, Ltd.,* by: *Henry A. Allen,* for appellants.

*John D. Bridgforth* and *Fletcher Long, Jr.,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellant Earl Gore and several other petitioners, who are also appellants here, filed a petition in the Circuit Court of St. Francis County for prohibition to Mayor Wallace Emerson of Palestine as Judge of the City Court (formerly Mayor's Court) of Palestine[1] and Henry Wilkinson, as Judge of the Municipal Court of Forrest City to prevent further proceedings in said courts against them. They allege, and it is admitted, that appellants were charged on October 31, 1976, with throwing objects, a violation of a city ordinance of Palestine,[2] and with disorderly conduct. On November 6, 1976, when their trial in the city court

[1]See Ark. Stat. Ann. § 19-1102.1 (Supp. 1975); *Russell* v. *Miller,* 253 Ark. 583, 487 S.W. 2d 617.

[2]Ordinance 7.12.03 reads as follows: *Throwing Objects.* Any person found throwing stones, sticks, or missiles of any kind whatsoever at or upon any public or private building or at any person in the street, alley, place or unenclosed or enclosed ground within the city shall be deemed guilty of a misdemeanor.

was set, their attorney appeared and objected to the jurisdiction of the court, on the ground that the mayor and the city court could not fairly and impartially decide the case, because of the position of Mayor of the city held by the judge of the court, citing *Ward* v. *Village of Monroeville,* 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972). Petitioners alleged that they had first entered pleas of not guilty to all charges against them. The city court, with the mayor acting as judge, transferred the cases to the Municipal Court of Forrest City. Petitioners alleged that they objected to this transfer, but that the charges against them were set for trial in the Municipal Court of Forrest City on November 17, 1976.

Petitioners alleged that the City Court of Palestine was an unconstitutional and illegal court, that it had no jurisdiction over them at any time, and that it had no jurisdiction to transfer the cases to any other court. Specifically they charged that the mayor's responsibility for city finances made his sitting as judge of that court a violation of their right to due process of law under the Fourteenth Amendment to the Constitution of the United States. They also asserted that there was no provision for a change of venue or transfer from the city court to the municipal court.

They also sought a declaratory judgment declaring that the City Court of Palestine is unconstitutional and illegal and that the mayor is without jurisdiction to try any case in that city, and ordering the mayor to refrain from sitting as judge or appointing anyone to sit in his stead.

Appellants rely upon *Tumey* v. *Ohio,* 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1926), as well as *Ward* v. *Village of Monroeville,* supra.

The circuit court held that the city court was not unconstitutional, because the mayor, who sits as its judge, is paid a fixed salary from the city's general fund and does not receive any part of fines assessed or forfeitures declared, and inquires of any defendant brought into the court whether he desires a transfer to the Municipal Court of Forrest City. The circuit judge expressed the opinion that the Mayor, when sitting as judge of the court should give any defendant arraigned

in the court the opportunity, first, to have his case transferred to the Municipal Court of Forrest City; and, if objection should be made, appoint someone else to sit as judge. The writ of prohibition and declaratory judgment were denied. We reverse in part.

The mayor of a second class city presides over council meetings and has the right to vote on matters submitted to a vote of the council. Mayor Emerson testified that all city purchases are made by the city council, in spite of the fact that city ordinances authorize him to make purchases for amounts less than $250 and, between $250 and $1,000, after having received bids. He also testified that the council approved all payments from city funds, in spite of an ordinance authorizing the mayor to approve any bills, debts or liabilities asserted against the city for payment out of any funds previously appropriated for that purpose but requiring confirmation by the council of all bills, debts or liabilities not covered by a previous appropriation. He also has the authority to sell city property if it is of a value under $1,000, but testified that he had never sold any. The mayor is a conservator of the peace. Ark. Stat. Ann. § 19-1204 (Repl. 1968). The mayor also has some authority to orally direct that an arrest be made. See Ark. Stat. Ann. § 43-405 (Repl. 1964). He actually directed that the arrests of some of the appellants be made.

Mayor Emerson, as Judge of the City Court, presides over all cases,[3] taking guilty and nolo contendere pleas, accepting bond forfeitures and, when a transfer is not requested, deciding cases. On guilty pleas, he determines the amount of the fine imposed. The fines assessed, along with bond forfeitures, are paid into the city general fund. These fines and forfeitures amounted to $44,425.96 and provided 79% of Palestine's general fund for the first eleven months of 1976.

Municipal corporations have the power to provide for fines, forfeitures and penalties for violations of their or-

[3]Emerson testified that he had never appointed anyone to hear a case, because no one had ever objected to his hearing any case.

dinances. Ark. Stat. Ann. § 19-2408 (Repl. 1968). The limitation on provisions for fines for first offenses is $500, for second offenses, $1,000 and for continuing offenses, $250 per day; however, if the offense is also a misdemeanor under state law, the city council may not provide for either less or greater penalties than those prescribed by state statutes. Ark. Stat. Ann. §§ 19-2409 (Supp. 1975), 19-2410 (Repl. 1968), and 19-2411 (Repl. 1968).

The mayor and two aldermen from each ward constitute the city council. Ark. Stat. Ann. § 19-1101 (Repl. 1968). The city court, presided over by the mayor, has the jurisdiction of a justice of the peace in matters arising under state law within the corporate limits, and exclusive jurisdiction of all prosecutions for violation of city ordinances and all fines and penalties assessed in all these cases go into the city treasury. Ark. Stat. Ann. §§ 19-1102, 19-2412 (Repl. 1968). There is a provision for the appointment by the mayor, at such times as he may choose, of any qualified elector of the city, or any attorney licensed in the state and residing in the county in which the city is located to sit as judge of the city court. The council is authorized to establish a schedule of fees or a monthly salary to be paid to the judge of the court out of the city's general fund so long as the fee schedule or monthly salary is not based upon the conviction of any person by the court. Ark. Stat. Ann. § 22-812 (Supp. 1975).

In *Tumey v. Ohio,* supra, the United States Supreme Court held that it was a violation of the Fourteenth Amendment and deprivation of due process of law to subject the liberty or property of a defendant in a criminal case to a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in the case. This case involved a fee system under which the mayor was compensated by a fee taxed as a part of the costs against a defendant who was convicted in the mayor's court; but, if he was acquitted, the mayor was not compensated. The court went further, however. It pointed out that the particular statutes in question were intended to stimulate small municipalities in the same county with large cities to organize and maintain courts to try persons charged with violations of the liquor laws everywhere in the county. When the purpose

was coupled with the mayor's responsibilities as chief executive officer, charged with the business of looking after the village finances, the court found that the situation put the mayor in two practically and seriously inconsistent positions, one partisan and one judicial. This, held the court, necessarily involved a lack of due process of law in the trial of defendants charged with crimes before him. The court was careful to differentiate that situation from one in which the mayor could impose the usually minor penalties attaching to violations of city ordinances or to misdemeanors in which the mayor could pronounce final judgment without a jury. The court reasoned that the addition to the revenue involved would not be sufficient to justify the fear that the mayor would be influenced in his judicial judgment by that fact.

The court extended the doctrine of *Tumey* in *Ward*. In *Ward*, the mayor was authorized to sit as judge in cases of ordinance violations and traffic offenses. He fined Ward $50 on each of two charges of traffic law violations. The court recited that the Mayor of Monroeville had wide executive powers, was the chief conservator of the peace and president of the village council, voting in case of a tie; that he accounted annually to the council for village finances, filled vacancies in village offices and had general overall supervision of village affairs. There, as here, a major part of the village income was derived from fines, forfeitures, and costs and fees imposed in the mayor's court. The percentage of total revenue from this source was much less in any year than that in this case. In *Ward*, the court held that the possible temptation to an average man to forget the burden of proof required for conviction of a defendant or lead him to fail to hold the balance, nice, clear and true between the state and the accused may exist whenever the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court. The court found violation of due process of law in that situation, and distinguished it from another in which the mayor had no executive powers, the city commission of five members (the mayor was one of them) governed the city and had all its legislative powers, and a city manager, along with the commission, exercised virtually all executive powers. There the mayor's interest in city finances and financial policies was

held too remote to warrant a presumption of bias toward conviction in cases coming before him as a judge. See *Dugan* v. *Ohio,* 277 U.S. 61, 48 S. Ct. 439, 72 L. Ed. 784 (1928).

The court, in *Ward,* said that it intimated no view that it would be unconstitutional to permit a mayor to serve in essentially a ministerial capacity in a traffic or ordinance violation case to accept a free and voluntary plea of guilty or nolo contendere, a forfeiture of collateral or the like.

We must agree that the trial court erred in holding that the City Court of Palestine, with appellee presiding, did not violate appellants' constitutional right to due process. The fact that the mayor does not receive any fee or additional compensation because of a conviction is of no real significance. His interest in city finances and the relationship of the fines and forfeitures received to total revenues certainly invokes the prohibitions of *Tumey* and *Ward* against the mayor's holding two inconsistent positions. We cannot say that the penalties that may be prescribed by the city in Arkansas are so minor that the fear of the subtle influence of city financial needs and policies upon judicial judgment can be classified as remote. The duties and responsibilities of the Mayor of Palestine are only slightly less comprehensive than those of the Mayor of Monroeville, Ohio were. The reliance upon revenue from fines, penalties and forfeitures by Palestine was somewhat greater than that by Monroeville. The City Court of Palestine, with its mayor presiding, clearly deprives a defendant, who stands trial on charges in that court, of due process of law guaranteed by the Fourteenth Amendment to the United States Constitution. That does not mean that the court itself and all others like it in Arkansas are unconstitutionally constituted. There seems to be no constitutional problem, even with the mayor presiding, in accepting pleas of guilty and nolo contendere and declaring forfeitures. We find no basis for a distinction, however, between trial of a case and imposing punishment of a defendant pleading guilty. The temptation to favor city finances would be no less when there is a permissible range of punishment lying solely within the judicial discretion of the presiding judge.

The situation is not remedied because of the practice of transferring cases to the Municipal Court of Forrest City, because exclusive jurisdiction of cases involving violations of city ordinances is vested in the City Court of Palestine and there is no provision for transfer of these cases to any other courts. *McKnight* v. *Newkirk*, 256 Ark. 342, 507 S.W. 2d 98. Cf. *Russell* v. *Miller*, 253 Ark. 583, 487 S.W. 2d 617. Appellees intimate that there was no violation of due process because, if found guilty in the City Court of Palestine, appellants could appeal and have a trial de novo in the Circuit Court of St. Francis County. This argument was specifically rejected in *Ward*.

We cannot agree with appellants that the power of the mayor to appoint a judge of the court also constitutes the same deprivation of due process of law, so long as the compensation of the judge is not dependent upon the conviction of any defendant. This appointing power is one usually associated with executive powers. The merging of executive and judicial powers was found unobjectionable in *Tumey*. If appellants' argument is carried to its ultimate, no one in office in Palestine could appoint a judge of its city court. There is not the slightest intimation in either *Tumey* or *Ward* that the results would be the same if the judge of the court had been appointed by the mayor. The appointee would not have any executive or legislative powers and his interest in city finances would be remote. His position would be similar to that of the mayor in *Dugan* v. *Ohio*, supra. The holding that there was no violation of due process in that situation was not impaired by *Ward*.

We do not consider the question of standing of appellants as taxpayers in this matter,[4] because the transfer of charges against them in the Municipal Court of Forrest City is adequate to give them standing in the matter.

The case of Lynn Reeves versus the Mayor as Judge of the City Court of Palestine is a separate case consolidated with the cases of the other appellants in the circuit court. He

---

[4] See, however, *Deadrick* v. *Parker*, 211 Ark. 394, 200 S.W. 2d 787, relating to chancery actions.

was arrested on charges of driving while intoxicated and carrying a concealed weapon. He entered pleas of guilty in the city court on these charges, but was found guilty of disorderly conduct and disturbing the peace and fined $100 and costs and his driver's license was suspended. Mayor Emerson presided over the court. The charges against Reeves were reduced by the city court as was the punishment imposed on him, after the intercession of Reeves' father. No objection to the court or to Mayor Emerson sitting as judge was ever made until this suit was filed. He is entitled to no relief in this proceeding.

We agree with the circuit judge that the City Court of Palestine is not an unconstitutional court, but do not agree that the "safeguards and practices" heretofore used by it do not violate the requirements of due process of law when the mayor presides as judge when pleas of not guilty are entered and when fines are to be imposed upon guilty or nolo contendere pleas. Ordinarily, we would specifically prescribe a definite judgment. In this case, however, there is some uncertainty about the proper application of our holding to the particular cases involved. One of the petitioners, Johnny Tedder, stated that he had no objection to being tried on the charges in the Municipal Court of Forrest City. The status of the charges of violation of the city ordinance is not clear to us. The trial court held that the cases of all appellants, except Lynn Reeves, should be returned to the City Court of Palestine if they object to the transfer of the cases to the Municipal Court of Forrest City. This holding was based upon the premise that the City Court of Palestine had no power to transfer the cases. Yet, the circuit court, in its findings, said that the testimony "would seem to indicate that all city charges have been dropped and that these appellants are now charged only with the offense of disorderly conduct or disturbing the peace." Mayor Emerson testified that the charges of throwing objects had been "merged into" a charge of disorderly conduct, in open court, although he said that appellants' counsel would not have heard the mayor when he said so. The charges were apparently still pending in the Municipal Court of Forrest City, when the judgment of the circuit court was entered. It appears, from the testimony of Mayor Emerson, that these transfers were made by his

treating the objections raised by appellants as motions to transfer. This was not proper. Appellants never requested, or suggested that they sought, a change of venue. The circuit court's direction that the cases be remanded to the City Court of Palestine seems appropriate.

The judgment of the circuit court is affirmed in the case of Reeves versus Emerson. In the other case, the holding that the City Court of Palestine is a constitutional court is affirmed, but the holding that the safeguards and practices used by the mayor as judge of the court fully meet the requirements of due process of law is reversed, as is the portion of the judgment prescribing arraignment procedures for the mayor, sitting as judge of the court. The cause is remanded for the entry of a judgment consistent with this opinion.[5]

BYRD, J., not participating.

---

[5]The circuit judge noted that mandamus, rather than prohibition, would have been the appropriate remedy. In view of *Copeland* v. *Huff*, 222 Ark. 420, 261 S.W. 2d 2, we agree.