Garry GRIFFIN *v.* STATE of Arkansas

CR 88-115                                                760 S.W.2d 852

Supreme Court of Arkansas
Opinion delivered December 5, 1988

*Murphy & Carlisle*, by: *John Wm. Murphy*, for appellant.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor General, for appellee.

ROBERT H. DUDLEY, Justice. The appellant, a resident of Springdale, was arrested in Springdale, in Washington County, at 2:30 a.m. for driving while intoxicated and three related traffic offenses. He was taken to the Washington County jail in Fayetteville, where a gas chromatograph test was administered. He was then given a citation which directed him to appear in the Elkins

Municipal Court for his trial. Elkins is also in Washington County, but about 18 miles from Springdale.

In the Elkins Municipal Court the appellant objected to venue based upon due process, equal protection, and Ark. Code Ann. § 16-85-201 (1987). The municipal court overruled the objections to venue and found the appellant guilty of all four charges. He then appealed to circuit court and, for his defense, relied upon error in the municipal court's ruling. The circuit court provided him a trial *de novo*, and he was found guilty of the driving while intoxicated charge and one of the other misdemeanors. He now appeals to this Court and argues that the municipal court erred in its ruling. We find no basis for setting aside the circuit court's judgments.

■ Even though the municipal court venue might have been erroneous, a point we do not reach, the applicable statute provides for an appeal to circuit court, where the accused is entitled to an entirely new trial, "as if no judgment had been rendered" in municipal court. Ark. Code Ann. § 16-96-507 (1987). The appellant does not question the fact that he received a fair trial, with proper venue, in circuit court — a trial that was not influenced or affected by what took place in the municipal court. Therefore, there is no basis for reversing the judgment of the circuit court. *Killion* v. *City of Waldron*, 260 Ark. 560, 542 S.W.2d 744 (1976).

■ An accused is not without a remedy when he is cited into a municipal court which he believes to be improper venue. In such a situation, the accused should seek a writ of prohibition in circuit court. A writ of prohibition will issue when a lower court without venue is about to act. *Tucker Enterprises, Inc.* v. *Hartje, Judge*, 278 Ark. 320, 650 S.W.2d 559 (1983); *Beatty* v. *Ponder, Judge*, 278 Ark. 41, 642 S.W.2d 891 (1982); *International Harvester* v. *Brown, Judge*, 241 Ark. 452, 408 S.W.2d 504 (1966); and *Monette Road Improvement District* v. *Dudley, Judge*, 144 Ark. 169, 222 S.W. 59 (1920).

Affirmed.

HOLT, C.J., HICKMAN, and NEWBERN, JJ., dissent.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. The majority indicates venue in this case may have been erroneous but does not reach the issue because the appellant failed to seek a writ of prohibition in circuit court. Based upon that portion of the majority's holding, I concur in the result it reached. I write because the court is divided four to three in this decision, and I wish to make my position clear that I may well have gone the other way if the court had considered the venue issue.

The venue question posed, but not answered here, arises when a municipal court entertains a state's misdemeanor action against a defendant where the commission of the crime occurred outside the territorial limits of the municipality but within the county where the alleged violation was committed. Concerning a municipal court's jurisdiction, the Arkansas Constitution clearly empowered the General Assembly to invest such jurisdiction as may be necessary in municipal corporation courts. This court has approved the General Assembly's granting such jurisdiction in a number of cases. *Pulaski County Municipal Court v. Scott*, 272 Ark. 115, 612 S.W.2d 297 (1981); *Johnson v. State*, 200 Ark. 969, 141 S.W.2d 849 (1940); *Brickell v. Guaranty Loan & Trust Co.*, 192 Ark. 652, 93 S.W.2d 656 (1936); *State ex rel. Moose v. Woodruff*, 120 Ark. 406, 179 S.W. 813 (1915). In this respect, Ark. Code Ann. § 16-17-206(b) (Supp. 1987) provides the jurisdiction of a municipal court is coextensive with the county except that, in counties having two judicial districts, the jurisdiction is limited to the district in which the court is situated. Of course, venue is distinguishable from criminal jurisdiction, which refers to the judicial power to hear and determine a criminal prosecution, in that it commonly pertains to geographical subdivisions, relates to practice and procedure and may be waived. In the instant case, as Justice Hickman notes in his dissent, five municipal courts have been established by law in Washington County, Arkansas. While each of the five courts has subject matter jurisdiction of traffic offenses, such as those brought against the appellant in this cause, I can find no venue statute that actually provides these misdemeanor offenses must be filed in a municipal court located within a prescribed geographical boundary.

Arkansas statutory law, Ark. Code Ann. § 16-17-116 (1987), does provide for a rather restrictive change of venue

procedure from one municipal court to another once a criminal proceeding is filed and two or more municipal courts are located in the county. Section 16-17-116, however is not definitive concerning the court in which the initial criminal proceeding must be filed. I suppose it could be assumed the venue requirement in municipal court is coextensive with that court's county-wide jurisdiction, and it does not matter that the criminal offense occurred or the defendant resided outside the municipality's territorial limits. However, if that were true, such misdemeanor proceedings can be brought against a defendant in one municipal court in the county no matter how many municipal courts there may be. Also, such a construction of § 16-17-116 would give municipal courts extra-territorial venue—which is not the situation with any other Arkansas trial court with criminal law subject matter jurisdiction. *See* Ark. Code Ann. § 16-19-402 (1987) (action brought before justice of peace where defendant resides or is found); Ark. Code Ann. § 16-18-110 (1987) (police court has authority to hear criminal offenses committed within the limits of the corporation); Ark. Const. art. 2, § 10 (accused has right to impartial jury trial in county where crime is committed and venue may be changed to any other county within the judicial district upon application of the accused).[1]

The General Assembly's failure to provide a venue law for bringing criminal proceedings in municipal court was not argued in this cause. Thus, what effect this omission might have remains unanswered. I have no doubt that the General Assembly has the authority, as well as the responsibility, to resolve this venue question. *See Brickell*, 192 Ark. at 655, 93 S.W.2d at 657; *see also* 22 C.J.S. *Criminal Law* § 176 (1961); 21 Am. Jur. 2d *Criminal Law* § 365 (1981). If the General Assembly fails to act, I am sure this court can expect some defendant to raise this venue question properly. When that occasion arises, confusion in the state's municipal court process will surely result if this court holds

---

[1] Amendment 55 to the Arkansas Constitution has since been enacted, but I note that prior Arkansas statutory law, still compiled in the code, provides for a change of venue from a justice of peace to municipal court. *See* Ark. Code Ann. § 16-19-409 (1987); *see also* Ark. Code Ann. §§ 16-19-401—408 (1987) for jurisdiction and venue provisions for justice of peace courts and how those provisions are affected where a municipal court exists.

— contrary to present practice and apparent belief — that a municipal court does not have venue of a crime or misdemeanor offense committed outside its territorial or city limits.

DARRELL HICKMAN, Justice, dissenting. The folly a court can reap when it will not follow the constitution is demonstrated by this case and its companion case, *Pschier* v. *State*, decided this same date. The 1874 Arkansas Constitution created a logical and comprehensive court system. It consisted of an appellate court, a general trial court which was the circuit court, a court of equity, a probate court and a county court. *See* Ark. Const. art. 7, §§ 1, 2, 11, 14, 28 and 34.

Lower level courts consisted of courts of common pleas, which could have county-wide jurisdiction on certain civil matters, justice of the peace courts with modest civil and criminal jurisdiction, and what were called corporation courts for towns and cities. These city courts were given the same subject matter jurisdiction as justice of the peace courts. Ark. Const. art. 7, §§ 32, 40 and 43. The legislature provided for three types of city courts: municipal courts, Ark. Code Ann. §§ 16-17-201 to 614 (1987); police courts, Ark. Code Ann. §§ 16-18-101 to 112 (1987); and mayor courts, Ark. Code Ann. § 14-44-108 (1987) and § 14-45-106 (1987).

In 1915, this court made a serious mistake in its interpretation of the constitution and decided that the Little Rock and North Little Rock municipal courts could have county-wide jurisdiction, that is, jurisdiction beyond their geographic limits, even though the judges were only elected as city officials. *State ex rel. Moose* v. *Woodruff*, 120 Ark. 406, 179 S.W. 813 (1915). The reasoning behind the decision was that the constitution did not say you couldn't give a city court extra-territorial jurisdiction. Of course, the constitution doesn't say that Arkansas cannot annex Oklahoma either.

The decision ignored entirely the overall scheme for lower courts and paved the way for the current proliferation of municipal courts operating beyond the bounds of constitutional restraints. Generally, these courts all have equal jurisdiction

throughout the county, just like a circuit court.[1] But unlike other courts, they can get their cases merely on the basis of the decision of the arresting officer. It is undoubtedly a one of a kind court system.

Act 87 of 1915 effectively provided for the creation of municipal courts only in the Pulaski County area; at the time it applied just to Little Rock and North Little Rock. I can only suppose that the court in 1915 thought there would never be more than one or perhaps two courts in a county. Perhaps the court thought is was improving the system by providing for a court for the whole county with a lawyer sitting as judge. Maybe the court wanted to accommodate the powers that be; or maybe the court didn't understand the consequences of its decision. In any event, could it be seriously argued that the court, or the drafters of the constitution, envisioned a situation like the one in present-day Pulaski County: six municipal courts, most empowered to hear identical cases, and, with no legal means of preventing overlapping jurisdiction, receiving their cases on the whim of the arresting officer?

The constitution's scheme, if it had been followed, would have worked perfectly. A city court would have jurisdiction over matters within its city limits and coexistent with justices of the peace over townships located in the city limits. Justices of the peace would handle certain civil and criminal matters within their townships;[2] a court of common pleas could be established to handle civil matters for the whole county (there are such courts in 13 counties in Arkansas). There was no mention of or contemplation by the drafters of a city court that could rule the county.[3]

---

[1] Some municipal courts have been given jurisdiction of only a part of the county. Act 322 of 1969 provides that in Clay County, Corning has jurisdiction of the county's western district and Piggott and Rector of the eastern district. Act 616 of 1975, struck down as local legislation in *Littleton* v. *Blanton*, 281 Ark. 395, 665 S.W.2d 239 (1984), provided for jurisdiction only in certain townships.

[2] We do not know for certain if justices of the peace still have judicial powers. Amendment 55, which reorganized county government did not grant them these powers. *See* Ark. Const. amend. 55.

[3] In some instances, a municipal judge is elected countywide, undoubtedly in deference to the accepted principle of democratic government that officials can only serve the area that elected them. *See Johnson County Board of Election Comm'rs* v. *Holman*, 280 Ark. 128, 655 S.W.2d 408 (1983). *See also* Ark. Code Ann. § 16-17-120 (Supp.

The *Moose* v. *Woodruff* decision left to the legislature unrestrained power to create city courts with county-wide jurisdiction and the power to decide what cities could have such municipal courts. If this court had followed the constitution, reform of our lower court system could have occurred properly by constitutional amendment.[4] Instead the way was paved to permit every hamlet in the state to have a municipal court and that is what has happened. There are now 124 municipal courts in Arkansas.

I cannot say exactly when it occurred to some cities and counties that getting a municipal court was the thing to do, but the idea has caught on. Forty-five municipal courts, nearly one-third of the current total, have been created since 1970. Part of this is due to the passage of Act 240 of 1973 which allowed municipal courts to be established in second class cities under some circumstances.

We have had opportunities to minimize the impact of *Moose* v. *Woodruff*. In *Lawson* v. *City of Mammoth Spring*, 287 Ark. 12, 696 S.W.2d 712 (1985), and *Littleton* v. *Blanton*, 281 Ark. 395, 665 S.W.2d 239 (1984), two municipal courts were declared illegal because they were based on local legislation. In *City of Springdale* v. *Jones*, 295 Ark. 129, 747 S.W.2d 98 (1988), we held a municipal court cannot have jurisdiction in another county even though the city extends into the other county.

But in *Pulaski County Municipal Court* v. *Scott*, 272 Ark. 115, 612 S.W.2d 297 (1981), we compounded our past error and approved the creation of an entirely new court creature—a county municipal court. That such a county-city court was authorized by the constitution is simply laughable. We have said repeatedly that the legislature does not have the power to create courts, *Walker* v. *Ark. Dept. of Human Services*, 291 Ark. 43,

---

1987).

[4] Amendment 64, which intended to transfer some of the civil workload from circuit courts to municipal courts, missed a good opportunity to remedy this situation. Evidently the drafters were unaware of the problem of multiple courts in a county with no scheme to control concurrent jurisdiction. Since Amendment 64 seems to give county-wide jurisdiction to municipal courts in some civil matters, it allows the same problem to persist because a civil claimant can pick his judge to hear his case. The amendment did not alter jurisdiction in criminal matters.

722 S.W.2d 558 (1987); *Ward School Bus Manufacturing Inc.* v. *Fowler*, 261 Ark. 100, 547 S.W.2d 394 (1977), yet we approved this new breed of court quite readily.

The Pulaski County "municipal court" was created to make money for the county (Pulaski County would not have to share in the fine revenues from other municipal courts). The court has done well. In fiscal year 1988, it collected $413,596.00 in fines and costs.

Our decisions have created confusion beyond the question of a court's jurisdiction. Is a municipal judge a city official or a county official? In *Beshear* v. *Clark*, 292 Ark. 47, 728 S.W.2d 165 (1987), we held it to be a municipal office. Would that be true of a judge of a county municipal court, or a municipal judge of part of a county? *See Pulaski County Municipal Court* v. *Scott, supra.*

This case and the *Pschier* case concern the court system in Washington County. There are five municipal courts in that county, one each in Fayetteville, Springdale, Prairie Grove, West Fork and Elkins. We have reviewed another case in which a Washington County law enforcement officer took a defendant across the county to another city's municipal court. *See Horn* v. *State*, 282 Ark. 75, 665 S.W.2d 880 (1984).

In this case, did deputy sheriff Vernon Sizemore who arrested Garry Griffin in Springdale, a city of 25,556, take him to be tried in Elkins, a town of 673, because the justice was better there? I expect not. Perhaps he wanted to help Elkins out in its revenue raising efforts. In fiscal year 1988, Elkins collected $46,353.00 in fines. Perhaps the sheriff's office favors Elkins, or maybe it is just a matter of spreading business around. Whatever the motivation, I cannot think of one good reason for taking Griffin, a Springdale resident arrested in Springdale, to the Elkins court.

The same question can be asked in the companion case. Why on earth would Pschier, who was arrested near Elkins, be tried in West Fork, which has a population of 1,580 and is about 15 miles from Elkins. Is the justice better there?

Is this the kind of court system the drafters of the constitution created? Nonsense.

The question is should we continue to tolerate such a system. For myself, I will stay with the constitution as I have in the past. *See City Court of Pea Ridge* v. *Tiner,* 292 Ark. 253, 729 S.W.2d 399 (1987) (Hickman, J., dissenting). To me the question is jurisdiction, which we can raise on our own. The municipal courts of Elkins and West Fork have no jurisdiction over misdemeanors committed outside their city limits. I can understand the court's reluctance to go back to the constitution at this late date, but the alternative is fostering a system that leaves a defendant, guilty or not, with the impression he has been railroaded.

The court can hope the legislature will come to its rescue and regulate the jurisdiction of these courts to prevent policemen from forum shopping. But the municipal courts and their cities are a strong lobby and their newfound power and revenues will not be easily surrendered. The municipal judges could work to change the system but they are unlikely to for the same reason.

The court can ignore the problem and hope a constitutional amendment will be passed or that these cases won't persist. In my judgment, that is essentially what the majority is doing. I would not reach the due process argument. But the majority's treatment of the question is disturbing; that is, if one can't find justice in these courts, it can be found in the circuit court. Frankly, that means due process of law can only be obtained if one hires a lawyer and spends several hundred or a thousand dollars for an appeal. The majority is saying the constitution does not count in these courts. There is no doubt that due process of the law encompasses the right to an impartial judge which can be a question in cases such as these. *See Ward* v. *Village of Monroeville,* 409 U.S. 57 (1972); *Gore* v. *Emerson,* 262 Ark. 463, 557 S.W.2d 880 (1977).

I get the impression that, for some reason, these are considered little cases involving little people who must fend for themselves. I suppose it will take a scandal to remedy this situation and scandal there will be. Because anytime a policeman can decide which judge will determine the fate of the defendant, there is an open invitation to corruption.

I would reverse and dismiss this case.

HOLT, C.J., and NEWBERN, J., join in this dissent.

DAVID NEWBERN, Justice, dissenting. Justice Hickman's dissenting opinion expresses my views. I was tempted to vote with the majority but publish a concurring opinion pointing out that if we hold that municipal courts do not have county-wide jurisdiction we might leave a void in those parts of counties not included in any municipality. Arkansas Const. amend. 55 made true county legislators out of justices of the peace, and we have not yet decided whether they retain any of their judicial powers. I suspect they do not, given our constitutional separation of powers scheme.

Our need for a new judicial article is pressing. This is not a time for timidity. It was our decision in *Walker* v. *Arkansas Dept. of Human Services*, 291 Ark. 43, 772 S.W.2d 558 (1987), which brought about the new amendment permitting the creation of juvenile courts. While I am not certain the void created by limiting municipal courts powers to the geographical limits of the cities they serve can be as readily filled as was the temporary juvenile court void, I am convinced it is the price we should be willing to pay to correct an absurd and unfair situation.

My hope is that we can stop dealing with the brush fires created by our antiquated judicial article by addressing the overarching conflagration. Arkansas is ready for a modern court system, like the one recently created in Alabama, including financial and political unification of the state judiciary. Ala. Const. amend. 328. *See Crown Equip. Co.* v. *Robinson Mining Co.*, 342 So. 2d 910 (Ala. 1977). *Cf. Colston* v. *State*, 57 Ala. App. 4, 325 So. 2d 520 (1975), cert. denied, 295 Ala. 398, 325 So. 2d 531 (1976).

HOLT, C.J., and HICKMAN, J., join this opinion.