STATE of Arkansas *v.* Aaron R. WEBB, et al.

CR 95-308                                                    913 S.W.2d 259

Supreme Court of Arkansas
Opinion delivered January 16, 1996

[Supplemental Opinion on Denial of Rehearing delivered
February 26, 1996.*]

---

* GLAZE, J., concurs.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., Sr. Appellate Advocate for appellant.

*George, Morris, Spivey & Capehart*, by: *Tom C. Morris III* and *Brent Capehart* and *Gocio, Dossey & Reeves*, by: *Samuel M. Reeves*, for appellees.

DAVID NEWBERN, Justice. The Benton County Circuit Court issued a writ of prohibition to the Rogers and Bentonville Municipal Courts. The writ prohibits those courts from trying various charges of statutory misdemeanors levied by citations issued by police officers to Shadrick W. Clardy, Edward Kaczorowski, Jane Schmeichel, Aaron R. Webb, Nathan Painter, and Billie W. Keene. The State appeals the order issuing the writ. We reverse the order and dismiss the case.

Each of the appellees was arrested for a statutory misdemeanor alleged to have been committed in Benton County but not within either the municipality of Bentonville or the municipality of Rogers, each of which is located in Benton County. Each of the appellees was ordered by citation to appear in either the Rogers or Bentonville Municipal Court. Upon consideration of each of the reasons given by the Trial Court and argued on appeal in favor of the writ, we conclude its issuance was unwarranted.

## 1. Venue

A writ of prohibition may issue if venue is improp-

erly laid. *See Prairie Implement Co., Inc.* v. *Circuit Court of Prairie County,* 311 Ark. 200, 844 S.W.2d 299 (1992); *Griffin* v. *State,* 297 Ark. 208, 760 S.W.2d 852 (1988). In the case now before us the Trial Court held, in effect, that venue would be improperly laid in any municipal court with respect to any offense alleged to have occurred outside the municipality served by the court. Proper venue is an issue not often litigated in criminal cases, except when a change of venue is at issue. The issue involved here, although it might understandably be referred to as one of venue because it deals with the place where a trial may be had, is more properly characterized as an issue of territorial jurisdiction.

If the allegation of a charging instrument were that an offense occurred outside the territorial jurisdiction of the court, then a judgment rendered by the court would be void. *Waddle* v. *Sargent,* 313 Ark. 539, 855 S.W.2d 919 (1993); *Williams* v. *Reutzel,* 60 Ark. 155, 29 S.W. 374 (1895); RESTATEMENT (SECOND) OF JUDGMENTS § 4 (1982).

■ The law in this State is that a criminal trial must be held in the county in which the crime was committed, provided that venue may be changed, at the request of the accused, to another county in the judicial district in which the "indictment is found." Ark. Const. art. 2, § 10; *Waddle* v. *Sargent, supra.* These authorities limit a circuit court to trying a criminal case in the county in which the crime was committed unless the accused requests the trial be moved to another county which, in any case, must be a part of the judicial district served by the court.

■ While our circuit courts are thus limited to trying accusations of crimes which occurred in the counties, or judicial districts, in which they sit, our municipal courts are not limited, either by our Constitution or by statute, to trying crimes which occurred in the cities in which they sit. To the contrary, our Constitution and Code both authorize a municipal court to assert limited subject-matter jurisdiction throughout the county in which it sits. Arkansas Code Ann. § 16-17-704(a)(2) (Repl. 1994) provides: "The municipal court shall have original jurisdiction, coextensive with the county wherein the court is situated over the following matters: . . . over misdemeanors committed within the county . . . ."

Arkansas Const. art. 7, § 43, provides:

> Corporation courts for towns and cities may be invested with jurisdiction concurrent with justices of the peace in civil and criminal matters, and the General Assembly may invest such of them as it may deem expedient with jurisdiction of any criminal offenses not punishable by death or imprisonment in the penitentiary, with or without indictment, as may be provided by law, and, until the General Assembly shall otherwise provide, they shall have the jurisdiction now provided by law.

The General Assembly first conferred county-wide jurisdiction on municipal courts in Act 87 of 1915, § 10, which was promptly challenged in *State* v. *Woodruff,* 120 Ark. 406, 179 S.W. 813 (1915), as being in violation of the Arkansas Constitution. We held as follows:

> No limitation is found in the Constitution upon the power of the Legislature to vest jurisdiction in municipal courts, when established, beyond the geographical limits of the municipalities. Nor can it be said that there exists any policy or sound reason for restricting the jurisdiction to such geographical limits. The authorities cited on the briefs of counsel do not sustain the contention that there is such an inherent limitation upon the power of municipal courts. Unless the organic law forbids, the Legislature may extend the jurisdiction beyond the territorial limits of the municipalities. The authority found in the Constitution is to vest jurisdiction in municipal courts "concurrent with the jurisdiction of justices of the peace in criminal and civil matters," that is to say, concurrent with the jurisdiction which it is within the power of the Legislature to confer upon justices of the peace. The Constitution does not by its express terms restrict the jurisdiction of justices of the peace to the territorial limits of the township in which they are elected to serve, therefore the jurisdiction of municipal courts finds no such restriction in the Constitution. At the time of the adoption of the Constitution of 1874, corporation courts in cities of the first class exercised the same jurisdiction under statutes then in force as did justices of the peace . . . which thus extended the

criminal jurisdiction to the territorial limits of the county, the same as that exercised by justices of the peace.

In *Sexson v. Municipal Court of Springdale*, 312 Ark. 261, 849 S.W.2d 468 (1993), a writ of prohibition was issued to prevent trial by the Springdale Municipal Court, which is situated in Washington County, of an offense alleged to have occurred in that part of Springdale which lies in Benton County.

■ Whether the issue be referred to as one of venue or territorial jurisdiction, nothing in our Constitution or Code dealing directly with the place in which misdemeanor charges must be tried limits it to the city in which the court sits. The territorial jurisdiction of municipal courts extends throughout the counties in which they sit.

## 2. Equal protection

A reason given for upholding the writ of prohibition is that to allow a municipal court to hear the case of an offense which occurred outside the limits of the city in which it is situated creates two classes of persons, one of which is denied its right to equal protection of the laws.

■ The State contends a general constitutional issue such as whether the prescription of jurisdiction for municipal courts violates the right to equal protection of the laws is not a proper subject for prohibition because the issue could be raised on appeal after objecting and moving to dismiss on that basis in a trial *de novo* in circuit court. With the possible exception of the venue issue, writs of prohibition are limited to cases in which a trial court purports to act without jurisdiction or in excess of its jurisdiction. *Taylor* v. *Rogers,* 298 Ark. 53, 764 S.W.2d 619 (1989); *Municipal Court of Huntsville* v. *Casoli,* 294 Ark. 37, 740 S.W.2d 614 (1987).

Given our decision in the *Griffin* case, we are not so certain that one who is convicted in a municipal court can get the issue of equal protection to us on appeal after the mandatory appeal to a circuit court where the issue may "disappear." We are sufficiently uncertain about it that we would be willing to consider the question now despite the fact that it might be possible to bring it before us on appeal of a *de novo* circuit court judgment resulting from a municipal court appeal. We cannot give it full

consideration, however, due to the posture of the parties in this case.

The argument of Mr. Webb and the other appellees is stated as follows in their brief:

> In order to be considered a candidate for municipal judge, one must be "an elector of the judicial subdivision wherein the court sits." Ark. Code Ann. § 16-17-209(a) (Repl. 1994). That is, one who is not a resident of Bentonville, for example, may not be a candidate in the election for judge of the Bentonville Municipal Court. Additionally, one who does not reside in Bentonville, for example, may not vote in the election of Bentonville's municipal judge. The result of this system is that persons not residing in a city having a municipal court are effectively denied equal protection and due process of law under both the United States and Arkansas Constitutions.

The argument would seem to be that these appellees would somehow be prejudiced if they were to be tried in a court they could not help elect. That argument is answered easily by pointing out that the jurisdiction of the courts in criminal cases is based on the territory in which crimes are committed and not on the residence or voting privileges of the persons who commit the crimes.

There might be a legitimate equal protection argument to be raised, but it has not been made here. The argument might be that one class is composed of the residents of the city who are enfranchised to elect the municipal judge; the other is composed of the other residents of the county who are not so enfranchised. Misdemeanors committed in the part of a county lying outside any city may, in our system, be adjudicated by a court not elected by the residents of the place where the crime allegedly occurred. It might be argued that citizens have a right to elect the person who tries the cases which arise in the territory in which they reside. Such a class of persons is obviously not contemplated in this case and is not present. Two of the appellees are residents of Bentonville, and one is a resident of another state.

Such an argument, if made, would be faced with the hurdle

of *Holt Civil Club* v. *City of Tuscaloosa,* 439 U.S. 60 (1978), in which the United States Supreme Court held that an Alabama law permitting cities to impose police regulations, including municipal court jurisdiction, three miles beyond city limits did not violate the right of equal protection of the laws accorded to the citizens residing in the three-mile area.

Lying beneath the challenge to county-wide jurisdiction of municipal courts, and mentioned in the appellees' brief, is the specter of improper forum shopping and perhaps some corruption in the process of selecting the municipal court in which a misdemeanor alleged to have occurred outside city limits might be tried. That was the allegation in *Griffin* v. *State, supra,* and in *Pschier* v. *State,* 297 Ark. 206, 760 S.W.2d 858 (1988). In those cases it was alleged that the offenses were committed near one municipality but the defendants were inexplicably cited to appear in a municipal court serving a city some distance away from the place in the county where the offense was committed. We were unable to reach that issue because, by the time the cases reached us, they had been the subjects of *de novo* trials in a circuit court where the argument did not apply.

█ In the case now before us, none of the parties who sought the writ alleged that he or she was being hailed into a court which was not the nearest to the place where the offense occurred. The State, referring to the dissenting opinion of Justice Hickman in the *Griffin* case, concedes that there may be good reasons for objecting to a system which might permit improper forum shopping, but that none of them amounts to a constitutional basis for holding a municipal court lacks jurisdiction of misdemeanors committed in the county in which it sits but beyond the limits of the city in which it is situated.

### 3. Jury trial

█ One accused of a crime in this State has a right to a trial by jury, Ark. Const. art. 2, § 7; Ark Code Ann. 16-89-107(b)(1) (1987); *Johnston* v. *City of Pine Bluff,* 258 Ark. 346, 525 S.W.2d 76 (1975); however, "There shall be no jury trials in municipal court. In order that the right of trial by jury remains inviolate, all appeals from judgment in municipal court shall be de novo to zzzcircuit court." Arkansas Code Ann. § 16-17-703 (Repl. 1994). There is thus a "two-tier" system for an

accused misdemeanant who wishes a jury trial.

In his ruling from the bench, the Trial Court remarked about the problems of extra costs in a second trial, the extra effort to which a defendant has to expend to obtain a trial by jury in a circuit court after conviction in a municipal court, and the possible embarrassment to be suffered by one who pleads guilty in a municipal court just to expedite obtaining the right to a jury trial in a circuit court.

The two-tier system of providing a trial by jury for accused misdemeanants has withstood constitutional scrutiny in both the United States Supreme Court, *Ludwig* v. *Massachusetts*, 427 U.S. 618 (1976), and this Court. *State* v. *Roberts*, 321 Ark. 31, 900 S.W.2d 175 (1995). The arguments being made in this case have been considered previously, and in any event, they are of the sort which do not challenge the jurisdiction of the municipal courts and which could indeed be raised on appeal.

Reversed and dismissed.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
## FEBRUARY 26, 1996

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., Sr. Appellate Advocate for appellant.

*Samuel M. Reeves* and *Tom C. Morris, III*, for appellees.

DAVID NEWBERN, Justice. The appellees' petition for rehearing asserts that the Court's opinion in this case erred in its somewhat gratuitous explanation about how a proper equal protection argument might have been, but was not, presented. The error alleged is that we overlooked the fact that some of the appellees were residents of Benton County but not of the cities which proposed to prosecute them. That is not so.

The argument that the three appellees who were residents of Benton County but not of Bentonville or Rogers were denied equal protection of the laws was answered in the Court's opinion by pointing out that the jurisdiction of a court with respect to a criminal offense has necessarily to do with the place in which the crime is alleged to have been committed rather than the residence of the defendant. It would be ludicrous to hold that a class of persons consisting of defendants not enfranchised to elect the judge was being denied equal protection of the laws. We pointed out that it was apparently not the intention of the appellees to assert they constituted such a class, as two of them were residents of Bentonville and one was from another state.

The point of the additional explanation, apparently missed by the appellees and certainly missed by the concurring opinion, is that a good equal protection question might have been raised by an "argument . . . that one class is composed of the *residents of the city who are enfranchised to elect the municipal judge; the other . . . composed of the other residents of the county who are not so enfranchised.* [Emphasis supplied.]" The question would be whether persons residing in the county, but not in a city served by a municipal court, would be entitled to have allegations of criminal conduct occurring in their locality adjudicated by a court elected by them as opposed to a court elected solely by residents of a city.

■ We did not misunderstand the argument presented by the appellees nor were any asserted facts overlooked in our deliberation and resolution of this case. The petition for rehearing is, therefore, denied.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. We erred in our opinion delivered on January 16, 1996, and while that error does not warrant granting a rehearing, it is significant enough that appellees are due an explanation. Because I believe the integrity of the court's opinion comes into question without the court's correction and clarification, I write to explain.

Here, appellees, seven municipal court defendants, had pending misdemeanor actions filed against them in either the Bentonville or Rogers municipal courts. They filed a petition for writs of prohibition in Benton County Circuit Court, alleging the two municipal courts lacked county-wide venue, and the circuit court issued the writs. The state appealed the lower court's decision, and the defendants' argued that the trial court was correct because to allow a municipal court to hear misdemeanor actions occurring outside the city limits violated their rights to equal protection of the law. Specifically, defendants argued that "one who does not reside in Bentonville may not vote in the election of Bentonville's municipal court, and the result . . . is the persons not residing in a city having a municipal court are effectively denied equal protection and due process of law. . . ."

In attempting to answer the defendants' contention, this court opined, "That argument is answered easily by pointing out that the jurisdiction of the courts in criminal cases is based on the territory in which crimes are committed and not the residence or voting privileges of the persons who commit the crimes." However, our opinion continued with the following but mistaken analysis of the facts and law:

> *There might be a legitimate equal protection argument to be raised, but it has not been made here.* The argument might be that one class is composed of the residents of the city who are enfranchised to elect the municipal judge; the other is composed of the other residents of

the county who are not so enfranchised. Misdemeanors committed in the part of a county lying outside any city may, in our system, be adjudicated by a court not elected by the residents of the place where the crime allegedly occurred. It might be argued that citizens have a right to elect the person who tries the cases which arise in the territory in which they reside. *Such a class of persons is obviously not contemplated in this case and is not present. Two of the appellees are residents of Bentonville, and one is a resident of another state.* (Emphasis added.)

In their petition for rehearing, the defendants properly point out that we overlooked the fact that three of them were arrested in Bella Vista, were county residents in Bella Vista or Centerton, but charged in the Bentonville Municipal Court. Another defendant was arrested in the Gann Ridge Road county area, resided in Avoca, but was charged in the Rogers Municipal Court. Clearly these four defendants had standing and fall within the alleged violated class of persons who reside in Benton County, and are not enfranchised to elect the municipal judge before whom they are charged.

In its response to the defendants' petition for rehearing, the state tactfully makes no mention of this court's failure to recognize the above four defendants and their obvious standing to raise the equal protection argument based upon voting rights (or lack thereof). Instead, the state merely renews its argument in its original brief — defendants in criminal cases cannot raise constitutional issues by means of a writ of prohibition. The state's argument was correct, *Juvenile H.* v. *Crabtree*, 310 Ark. 208, 833 S.W.2d 766 (1992), and in retrospect, our court should have rejected the defendants' equal protection argument for this reason without stating more.

In sum, our error in overlooking the resident evidence, concerning four of the defendants, caused us to give the wrong reason for refusing to reach their equal protection argument. We should be willing to correct that error, and state a correct reason for rejecting the defendants' argument — a writ of prohibition does not lie to address constitutional errors.

I conclude by saying that the court now issues a supplemental opinion wherein it better frames the equal protection argument .it had intended to state in the original opinion, namely, "The question of whether persons residing the the county, but not in a city served by a municipal court, would be entitled to have allegations of criminal conduct occurring in their locality adjudicated by a court elected by them as opposed to a court elected solely by residents of a city." But if this is what we meant to say in our original opinion, the court fails to explain why it was necessary to mention the significance of pointing out that "two of the defendants are residents of Bentonville." As noted above, the court's original opinion clearly made no mention of the four defendants who are residents of the county.

At least with the clarifying supplemental opinion, defendants now know the so-called "legitimate" equal protection argument this court intended to pose in its opinion. If the defendants missed anything of importance in reading the court's original opinion (as the majority suggests), it was due to our failure to make ourselves understood.