Henry Chester TIMMONS *v.* STATE of Arkansas

CR 86-86 · 717 S.W.2d 208

Supreme Court of Arkansas
Opinion delivered October 13, 1986
[Rehearing denied November 17, 1986.]

*William R. Simpson, Jr.*, Public Defender; *Thomas B. Devine, III*, Deputy Public Defender, by: *Jerry R. Sallings*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. We reversed the appellant's first conviction for rape and remanded for a new trial because the trial court erred in failing to declare a mistrial for prosecutorial misconduct. *Timmons* v. *State*, 286 Ark. 42, 688 S.W.2d 944 (1985). The appellant argues he should not have been retried because a new trial was barred by the double jeopardy proscription of the Fifth Amendment to the U. S. Constitution. He also argues his retrial was in violation of his right to a speedy trial. We disagree, and thus we affirm the conviction resulting from his second trial.

### 1.  Double jeopardy

At the first trial, a serologist was present to testify about evidence gathered from the alleged victim during a medical

examination after the alleged rape had occurred. The appellant's counsel objected to any testimony by the serologist, saying, "[m]y understanding is that the state is not going to be able to establish chain of custody on any of the materials that she examined. . . ." The court allowed the prosecutor to put the serologist on the witness stand even though the prosecutor had said, "[Defense Counsel] is correct. I can't make my chain. It is obvious to the court that I can't, and whenever he objects I'll quit." The witness was asked whether she had examined items taken from the alleged victim. The appellant's counsel objected again, and the objection was sustained. The questions and answers at that point in the first trial are set out in a concurring opinion accompanying the majority opinion in the report of our decision on the first appeal. 286 Ark. at 45, 688 S.W.2d at 945 and 946.

The problem which ultimately caused reversal of the first conviction culminated during closing arguments. Counsel for the appellant made the most of the prosecution's inability to introduce any physical evidence. Part of his argument was:

> Thank you, Your Honor. May it please the Court, ladies and gentlemen of the jury, as ya'll know we've all sat here and listened to the evidence in this case. We've been through the instructions and that we asked you about in voir dire to consider. I hope at this time you have not made your decision. I hope you are prepared to go into the jury room and deliberate amongst yourselves and discuss the evidence, raise questions that you may have about it and make a decision. That's your job and we appreciate you for coming here today and listening to the evidence.
>
> Now Mr. Adams [prosecutor] has referred to inconsistencies that I'm going to point out and I am going to point out those inconsistencies. First I want to talk about something else and that is a rape case in general and what we have here. It's kind of a maxim in our business that rape is an easy charge to bring and a hard charge to defend. It often comes down to the word of one person. That's why we have asked you to watch their demeanor and see what you think about their ability to testify consistently to convince you that what they say happened happened.
>
> One thing that Mr. Adams hasn't touched on that I'm

to talk about first is the evidence that you will have to take into the jury room with you and examine during your deliberations. And that is none. For those of you who have had criminal experience or have any experience with crime and the results of crime and those of you who know from your own experiences what truth and lying is about, it's very hard to fabricate a story and to get all the facts to fit. One of the problems when that happens is that we live in a physical world. Almost everything we do impacts on a physical world. What I'm saying to you is that crime (unintelligible) physical evidence. You have none. You have none to take back and look, none to consider in your deliberations. You have no medical evidence.

Now Mr. Adams has said that the only inconsistencies — let me see if I can reconstruct this — that they have no inconsistencies about the rape. Well, I would submit to you that those — that absence of inconsistencies is valid only if you are prepared to accept the State's position and the way they are asking you to fill in the gaps in their proof. They say there's no inconsistency in the elements of their case, sexual intercourse and forcible compulsion. The State has not even proved that there was any intercourse. Now let me add right here. Obviously I'm a lawyer advocating for my client. I'm not here to trick you and I'm not here to misstate the evidence. I notice that you have been paying attention but I didn't see anyone taking notes. But I'm not here to tell you something saying that the evidence is not true because you will know that and you won't believe me and I'm not very persuasive if I come up here and try to convince you the evidence is not what it is.

Mrs. Wiggins did testify that they had intercourse. And it's really going to come down to Mrs. Wiggins' statement, what you make of it and how you believe it. I'm going to discuss that at some length but before I do I just want to point out, there has been no evidence offered here today that you can look at in an objective way that would support her allegations. And I would point to several of those things. But I mention first of all, no medical evidence, no examination by a doctor saying that she had had the sex, no indication of trauma to her body, scars or bruises,

scratches, nothing, nothing at all to substantiate her claim that she had sex with the man. Much of what I'm going to talk about is dealing with the State's case because they have the burden and because I believe that their own case is the best evidence of the fact that they cannot make this case. And I don't think they can convince you beyond a reasonable doubt.

Presumably responding to this argument, part of the prosecutor's closing statement, and the objection and mistrial motion, were as follows:

[Prosecutor]: Now, no objective evidence. The evidence is unrebutted that she went to the Crime Lab for a rape examination. We put Lisa Cooper on the stand, the serologist. He's doing his job. He objected to her testimony and we did not hear what that was. He's doing his job.

[Defense counsel]: Your Honor —

[Prosecutor]: Keep that in mind.

The Court: One moment, Mr. Adams.

(Thereupon, out of the hearing of the jury the following discussion occurred between Court and counsel:)

[Defense counsel]: Your Honor, I think this is improper argument. And I want to object to it.

The Court: Ms. Cooper did not testify to anything, Mr. Adams.

[Prosecutor]: That's correct. I didn't say she did. I said she was put on the stand and she testified as to her job and he objected.

The Court: That's correct. There's no testimony.

[Prosecutor]: That's correct.

The Court: It's not proper for you to refer to it.

[Prosecutor]: He is the one who said there's no evidence since —

The Court: That is correct, sir.

[Prosecutor]: All these things that he objected to —

The Court: The objection is sustained. You cannot refer to any evidence that was not admitted in this trial.

[Prosecutor]: I'm not referring to the evidence. I'm referring that she was on the stand and he's the one who objected to it, not me.

The Court: It is sustained.

[Defense counsel]: I'm going to have to move for a mistrial also on the prejudicial nature of reference to evidence that is not before the jury.

In support of his contention that a mistrial based on prosecutorial misconduct raises the double jeopardy bar, the appellant relies on *United States* v. *Martin,* 561 F.2d 135 (8th Cir. 1977), in which the court of appeals took to heart *obiter dicta* from United States Supreme Court decisions in *United States* v. *Jorn,* 400 U.S. 470 (1970), and *United States* v. *Dinitz,* 424 U.S. 600 (1976). In those cases, respectively, it was said, although not held, that "prosecutorial overreaching" and "prosecutorial actions motivated by bad faith or undertaken to harass or prejudice the defendant" causing mistrial would bar retrial. In *United States* v. *Martin, supra,* a mistrial was granted because the prosecution read to the jury, at length, some highly prejudicial testimony taken in grand jury proceedings. The court of appeals held retrial was barred because "[i]t can best be described as prosecutorial error undertaken to harass or prejudice the defendant — prosecutorial overreaching [footnote omitted]. . . ."

The state's only response to the appellant's argument based on *United States* v. *Martin, supra,* is that here we have retrial after reversal rather than retrial after a mistrial. Although the state does not explain its position or cite authority to support it, based on our own research we agree.

One of the primary bases for applying the double jeopardy bar cited in *United States* v. *Jorn, supra,* was the interest of an accused in having his trial completed before the first jury selected to hear it. In that case, a mistrial was declared *sua sponte* by the trial judge because he felt some witnesses had not been given proper self-incrimination warnings and needed to consult their

attorneys before testifying. In his plurality opinion announcing the judgment of the court, Mr. Justice Harlan wrote:

> For the crucial difference between reprosecution after appeal by the defendant and reprosecution after a *sua sponte* judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his "valued right to have his trial completed by a particular tribunal." See Wade v. Hunter, 366 U.S., at 689, 69 S. Ct., at 837.

[400 U.S. at 484, footnote omitted].

Here there was no abortion of the first trial, *sua sponte* by the judge or otherwise. The appellant was not deprived of his chance to gain an acquittal from the first jury he faced by virtue of a premature ending of the trial caused by the misconduct of the prosecutor. The trial ended in a conviction, and the appellant has in no sense been released from jeopardy. His retrial resulted from reversal of his first conviction not from a premature ending of his first trial.

The landmark case on the law of double jeopardy is *Ball* v. *United States*, 163 U.S. 662 (1896). Several defendants were tried for murder based on an indictment later determined to have been defective. One defendant was acquitted. Two others were convicted. The government tried all three again. It was held that the defendant who had been acquitted at the first trial was entitled to the protection of the double jeopardy bar, and it was error to have retried him. As to the others, the court said a defendant who procures the setting aside of a judgment against him "upon an indictment to be set aside" may be tried anew for the same offense of which he was previously convicted. Although the opinion did not thoroughly explain the distinction, it is apparent that the court's emphasis was on the fact that the defendants had secured the setting aside of the judgment against them by writ of error.

In *United States* v. *Tateo*, 377 U.S. 463 (1964), the appellant argued that, because he had his conviction overturned

by a collateral proceeding in which he demonstrated he was coerced into pleading guilty in the midst of his first trial by the judge's improper sentencing threats, he was entitled not to be retried. The Supreme Court found no reason to treat the case differently from a reversal by an appellate court, as in the case before us now, which does not prohibit retrial. In his opinion for the Supreme Court majority, Mr. Justice Harlan wrote:

> Tateo contends that his situation must be distinguished from one in which an accused has been found guilty by a jury, since his involuntary plea of guilty deprived him of the opportunity to obtain a jury verdict of acquittal. We find this argument unconvincing. If a case is reversed because of a coerced confession improperly admitted, a deficiency in the indictment, or an improper instruction, it is presumed that the accused did not have his case fairly put to the jury. A defendant is no less wronged by a jury finding of guilt after an unfair trial than by a failure to get a jury verdict at all; the distinction between the two kinds of wrongs affords no sensible basis for differentiation with regard to retrial. [377 U.S. at 466-467, footnote omitted]

This language might be by analogy supportive of the notion that whether a trial ends by mistrial or a conviction is reversed because one should have been granted the same unfairness exists and the same result should obtain. However, the *holding* of *United States* v. *Tateo, supra,* appears in the last paragraph of the opinion: "We conclude that this case falls squarely within the reasoning of Ball and subsequent cases allowing the Government to retry persons whose convictions have been overturned. [377 U.S. at 468]."

Looking to the holdings of *United States* v. *Jorn, supra,* and *United States* v. *Dinitz, supra,* and to the cases following the fundamental proposition of *Ball* v. *United States, supra,* we do not feel compelled to extend the Eighth Circuit Court of Appeals decision in *United States* v. *Martin, supra,* so as to apply the double jeopardy bar in a case where the appellant's conviction has been overturned on appeal as opposed to mistrial before conviction occurs.

## 2. *Speedy trial*

The appellant argued at his first trial that he had been deprived of his right to a speedy trial. The appellant was free on bond, and the trial was held within the eighteen-month limit prescribed by Ark. R. Crim. P. 28.1(c). The court ruled against him on this point, and he did not appeal that ruling. The appellant now argues that the delay caused the loss of some physical evidence taken during the alleged victim's medical examination which would have been helpful to him in the second trial.

■ Assuming we are in a position to review this point, we would have to find a strong showing of prejudice to hold the delay short of the eighteen-month period was a violation of the speedy trial right. *Matthews* v. *State*, 268 Ark. 484, 598 S.W.2d 58 (1980). We find no such showing here. The appellant does not explain the manner in which his cross examination of the physician who took the evidence would have been enhanced had the evidence been available.

Affirmed.