Clay Anthony FORD *v.* Honorable Ralph WILSON

CR 96-1047                                    939 S.W.2d 258

Supreme Court of Arkansas
Opinion delivered February 10, 1997

*Ricky Hicks, Brian Ratcliff,* and *Timothy O. Dudley,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Kent G. Holt,* Asst. Att'y Gen., for appellee.

■ ROBERT L. BROWN, Justice. Petitioner Clay Anthony Ford petitions for a writ of prohibition to Judge Ralph Wilson, circuit judge of Mississippi County, on three grounds: (1) venue is improper in Mississippi County and should be fixed in Crittenden County; (2) the State is prevented from seeking the death penalty under principles of *res judicata* and collateral estoppel; and (3) retrial of petitioner is precluded as violative of the double-jeopardy clause. Though the style of the petition is couched in terms of an individual circuit judge, prohibition lies to the circuit court and not to a judge. *Lee v. McNeil,* 308 Ark. 114, 823 S.W.2d 837 (1992). We will treat this petition accordingly. None of the points is a basis for prohibition relief, and we deny the petition.

On October 1, 1980, petitioner was charged by information with capital murder in connection with the September 5, 1980 slaying of an Arkansas State Police Trooper. The information was filed in Crittenden County Circuit Court, which was the county where the crime was committed. On Ford's motion, venue was changed from Crittenden County to Mississippi County. Following a jury trial in that venue in 1981, Ford was found guilty and sentenced to death. His conviction and death sentence were affirmed on direct appeal. *See Ford v. State,* 276 Ark. 98, 633 S.W.2d 3 (1982). The United States Supreme Court subsequently denied Ford's petition for a writ of certiorari. *See Ford v. Arkansas,* 459 U.S. 1022 (1982).

On December 20, 1982, this court issued a *per curiam* order denying Ford's petition for postconviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure due to failure to allege adequate grounds for relief. This was followed by a *per curiam* order from this court issued on December 27, 1982, which denied Ford's amended petition for Rule 37 relief because it was untimely and because it failed once more to allege sufficient grounds for relief. *See Ford v. State,* 278 Ark. 106, 644 S.W.2d 252 (1982).

On December 29, 1982, Ford filed a petition for writ of habeas corpus and a petition for stay of execution in the federal district court. On August 30, 1994, the federal district court vacated Ford's conviction and sentence and directed the State to "either retry Ford within 120 days or the writ of habeas corpus shall be issued and Ford will be released." *Ford v. Lockhart*, 861 F. Supp. 1447, 1470 (E.D. Ark. 1994). The federal district court conditionally granted Ford's petition for relief on three grounds. First, the court determined that Ford's trial counsel was ineffective during the penalty phase for failing to introduce evidence of two mitigating circumstances: (1) that Ford was intoxicated at the time of the offense; and (2) that Ford had been subjected to significant physical abuse as a child. For its second ground, the court determined that the State had exercised its peremptory challenges systematically and in a racially discriminatory manner. Finally, the court ruled that the state trial court had committed prejudicial error by allowing the introduction of nonviolent felonies into evidence during the penalty phase.

The Eighth Circuit Court of Appeals, without discussing the merits of the federal district court's finding of ineffective assistance of counsel during the penalty phase or the error in allowing the introduction of nonviolent felonies, affirmed on the basis of the systematic exclusion of African-Americans from the jury, which the Court of Appeals found to be a "structural error" not subject to a harmless-error analysis. *See Ford v. Norris*, 67 F.3d 162 (8th Cir. 1995).

On March 25, 1996, Ford filed a motion to fix venue in Crittenden County Circuit Court and asserted that venue should be fixed in that county because it is where the crime occurred, as required by Ark. Const. art. 2, § 10. The State objected and contended that Ford was entitled to a new trial only in Mississippi County because he had already exercised his statutory right to one change of venue under Ark. Code Ann. § 16-88-203 (1987). The circuit court denied Ford's motion. Ford also moved to dismiss the capital murder charge as violating his double-jeopardy rights, or, in the alternative, to prohibit the State from seeking the death penalty under principles of *res judicata* and collateral estoppel. Those motions were denied by order entered June 20, 1996, as

well as a motion for reconsideration of the venue point, and the trial court granted Ford leave to petition this court for a writ of prohibition. Ford's prohibition petition in this court followed.

## I.  Improper Venue

Ford first contends that after vacation of his 1981 conviction and sentence by the federal district court, venue should be fixed in Crittenden County — the county of the crime where the information against him was filed. We initially note that a writ of prohibition is a proper remedy only when the acting court is wholly without jurisdiction. *Hall v. Pulaski County Circuit Court*, 320 Ark. 593, 898 S.W.2d 46 (1995). However, this court has held that the writ may issue when venue lies improperly. *State v. Webb*, 323 Ark. 80, 913 S.W.2d 259, *reh'g denied*, 323 Ark. 87-A, 920 S.W.2d 1 (1996); *Griffin v. State*, 297 Ark. 208, 760 S.W.2d 852 (1988).

Ford's contention on appeal is marked by simplicity, as it was before the trial court. He observes that the Arkansas Constitution entitles him to a trial in the county where the crime was committed. *See* Ark. Const. art. 2, § 10. *See also State v. Webb, supra.* He then contends that the granting of conditional habeas corpus relief and the vacating of his conviction and sentence had the effect of causing the proceedings to begin anew, which entitles him to be prosecuted in Crittenden County.

The State counters that Ford must be retried in Mississippi County and correctly observes that the Arkansas Code provides: "Only one (1) change of venue shall be granted in any criminal case or prosecution." Ark. Code Ann. § 16-88-203 (1987). *See also Ronning v. State*, 295 Ark. 228, 748 S.W.2d 633 (1988). Because Ford has already had one change of venue to Mississippi County, the State theorizes that venue cannot be changed again, and Ford must be retried in the county of the first trial. The State further cites a statute which provides that if an appellate court finds prejudicial error in the *sentencing* proceeding in a death case, it may set aside the death sentence and remand the case "to the trial court in the jurisdiction in which the defendant was originally sentenced." Ark. Code Ann. § 5-4-616(a)(1)

(Repl. 1993). This, the State advances, is sufficiently analogous to the circumstances in the case at hand.

The issue raised appears to be one of first impression in Arkansas and, indeed, nationally. Were this a matter of a simple reversal by this court and a remand, we would have no hesitancy in holding that proper venue lies in Mississippi County, the county of the first trial. For example, in a 1981 case, the Florida District Court of Appeal concurred in that position and held that on remand after a reversal for error committed in the first trial, venue lay in the county of the first trial, where venue had been changed at the defendant's request. *Coxwell v. State*, 397 So.2d 335 (Fla. App. 1981). The Florida court stated:

> We accordingly hold that there was no error in refusing to grant his motion to send the case back to trial in the same county from whence it came, being the same county in which appellant had previously contended he could not receive a fair trial.

*Coxwell*, 397 So.2d at 336.

■ Ford contends, nonetheless, that the fact the federal district court *vacated* the State judgment of conviction annuls and voids the judgment and sends the matter, metaphorically, back to square one. Federal courts, of course, have no power to remand a matter to a state trial court but may, on collateral review, grant a writ of habeas corpus conditioned on the State's affording the defendant certain relief. *See Maywood v. Smith*, 791 F.2d 1438 (11th Cir. 1986). Thus, the question in the instant case is what is the status of the State's prosecution following a conditional writ of habeas corpus and vacated judgment. Have all previous proceedings concerning this prosecution been annulled by the federal district court's order? Must a new charging information be filed by the State? Must Ford be released from custody, pending a new charge being brought?

We think the answers to these questions must be in the negative and turn to the United States Supreme Court's decision in *Irvin v. Dowd*, 366 U.S. 717 (1961), for guidance on this point. In *Irvin*, the defendant was charged with murder and sought a change of venue to an adjoining county which was granted. He then sought a second change of venue which was denied. He was

tried, convicted, and sentenced to death. The United States Supreme Court, on habeas corpus review, voided the State conviction because of juror bias. The Court stated:

> Petitioner's detention and sentence of death pursuant to the void judgment is in violation of the Constitution of the United States and he is therefore entitled to be freed therefrom. The judgments of the Court of Appeals and the District Court are vacated and the case remanded to the latter. However, petitioner is still subject to custody under the indictment filed by the State of Indiana in the Circuit Court of Gibson County [the county where venue was changed] charging him with murder in the first degree and may be tried on this or another indictment.

*Irvin*, 366 U.S. at 728.

It is clear under *Irvin v. Dowd* that the Supreme Court did not contemplate that a new information was required following a void conviction; nor was a release from custody mandated. And, finally, though the issue of venue in the original county was not directly at issue in that case, the Court assumed proper venue, following a void conviction, was in the county where venue had been transferred.

■ This result comports with good sense. We do not view a vacating or voiding of a state conviction for trial error as rendering the defendant a free man, unfettered by the criminal charge and prior determinations of venue. There is, too, the fact that the Eighth Circuit Court of Appeals ordered Ford discharged unless the State commenced proceedings to "retry" Ford within a reasonable period of time, which presupposes that Ford's status is what it was immediately before trial commenced in Mississippi County in 1981. *See Ford v. Norris, supra.*

■ We are cognizant of Ford's affidavit and argument that trial counsel was ineffective regarding the change of venue to Mississippi County and that Ford did not attend the hearing on the venue change in 1981, which violated his basic constitutional rights. Because of this, he argues that he has not really received the one change of venue to which he is entitled under § 16-88-203. At first blush, a change of venue appears to have been a reasonable course of action by his trial counsel in 1981. Certainly,

the federal district court did not base its finding of ineffectiveness on trial counsel's motion to change venue. We can only conclude that the change of venue to Mississippi County was a valid defense strategy. Moreover, this is an issue that could have been raised by Ford in trial and on direct appeal, but it was not.

■ In sum, we cannot conclude that the Mississippi County Circuit Court, Chickasawba District, is an improper venue.

## II. Res Judicata and Double Jeopardy

Ford next contends in support of prohibition that the federal district court found he was innocent of the death penalty under the Supreme Court decision of *Sawyer v. Whitley*, 505 U.S. 333 (1992), and that this finding is *res judicata* and precludes the possibility of death as a penalty on retrial. He further complains that his retrial for murder impinges on his double-jeopardy rights. We disagree on both counts.

We first must decide whether the defenses of *res judicata* and double jeopardy are viable jurisdictional issues that would foreclose a new trial in whole or in part. We have had occasion recently to comment on this issue in two cases. *See Fletcher v. State*, 318 Ark. 298, 884 S.W.2d 623 (1994); *Leach v. State*, 303 Ark. 309, 796 S.W.2d 837 (1990). In *Fletcher*, this court declined the opportunity to issue a writ of prohibition when confronted with the petitioner's double-jeopardy argument that he was being brought to trial in Lonoke County on four charges of incest when he had previously pled guilty in Pulaski County to one count of incest involving the same victim. After examining the factual findings of the Lonoke County Circuit Court, we stated:

> Because prohibition is a remedy of sufferance rather than of right, only when it is entirely clear that the court below is exceeding its jurisdiction will we grant it. For this reason, we deny the appellant's request for a writ of prohibition without prejudice and without taking a position on the issues of double jeopardy and collateral estoppel.

*Fletcher v. State*, 318 Ark. at 301, 884 S.W.2d at 626.

In a similar vein, this court denied the petition for writ of prohibition in *Leach v. State, supra,* when confronted with a double-jeopardy argument. We stated:

> On reflection, however, and viewing the limited purposes of a writ of prohibition, it becomes clear that we should not grant the writ. We have no idea what the evidence in this case will show about whether the conspiracies were separate agreements.

*Leach,* 303 Ark. at 311, 796 S.W.2d at 838. In both cases, our reluctance to entertain these constitutional defenses as grounds for prohibition was palpable.

■ ■ In *Fletcher v. State, supra,* we further acknowledged that the United States Supreme Court had accorded constitutional dimensions to collateral estoppel by incorporating it into the Fifth Amendment bar against double jeopardy. *See Ashe v. Swenson,* 397 U.S. 436 (1970). The same rationale should apply to *res judicata* because if a charge or proposed penalty has been decided in a prior criminal proceeding in favor of the defendant, the retrying of that same defendant for the same charge or penalty may well constitute double jeopardy. *See, e.g., Bullington v. Missouri,* 451 U.S. 430 (1981) (defendant could not be retried for the death penalty when previously acquitted by a jury of that penalty). Hence, we view Ford's claim of *res judicata* in connection with the death penalty as a facet of double-jeopardy protection. In this connection, we have held that the proper remedy for a denial of a motion to dismiss based on double jeopardy is an interlocutory appeal. *See Sherman v. State,* 326 Ark. 153, 931 S.W.2d 417 (1996).

Ford, however, has eschewed an interlocutory appeal on his claims of *res judicata* and double jeopardy and chosen instead to include these claims in his prohibition petition regarding venue, after obtaining leave of the trial court to file the petition. Under these unique circumstances where a valid ground for prohibition exists in the form of a venue question, where the period for filing an interlocutory appeal has passed, and where leave of the court to file the petition was timely obtained, we will address the two remaining issues.

### a. Res Judicata

We decline, however, to give *res judicata* effect to the federal district court's finding that Ford is innocent of the death penalty. First, we have some doubt that failure of trial counsel to offer two mitigating circumstances results in such a finding. The U.S. Supreme Court in *Sawyer v. Whitley, supra*, specifically refused to consider the failure to instruct the jury on mitigating circumstances as a basis for finding innocence of the death penalty:

> Sensible meaning is given to the term "innocent of the death penalty" by allowing a showing in addition to innocence of the capital crime itself a showing that there was no aggravating circumstance or that some other condition of eligibility had not been met.
>
> But we reject petitioner's submission that the showing should extend beyond these elements of the capital sentence to the existence of additional mitigating evidence.

505 U.S. at 345. *See also Snell v. Lockhart*, 14 F.3d 1289, 1297 n.6 (8th Cir. 1994).

■ But, more importantly, we find no support in case law for the proposition that a finding by the federal district court of actual innocence of the death penalty as part of collateral review decides that issue on retrial. We view this case as substantially different from *Bullington v. Missouri, supra*. In *Bullington*, the Court was faced with the issue of whether a criminal defendant who had been acquitted of the death penalty under a bifurcated sentencing proceeding and had his conviction reversed on appeal could then be found guilty on retrial and sentenced to death under the same bifurcated sentencing scheme consistent with the double-jeopardy clause of the Fifth and Fourteenth Amendments. The Court noted that Missouri criminal procedure required the State to prove additional facts beyond a reasonable doubt in a separate proceeding in order to justify the sentence, and that because Bullington had been acquitted of the death penalty in such a proceeding in the original trial, he could not again be exposed to a sentence for which he had been acquitted.

The *Bullington* facts are not the case before us. Ford has not had a jury find him innocent of the death penalty. Indeed, just the contrary was the result of the first trial. Moreover, the only issue litigated on collateral attack in the case before us was whether trial counsel was ineffective in failing to present certain mitigating circumstances to the jury. The federal district court found that counsel was ineffective and, as a result, Ford was innocent of the death penalty. However, whether the evidence presented at trial was *insufficient* to expose Ford to the death penalty was not at issue.

Ford cites us to *State v. Cumbo*, 451 P.2d 333 (Az. Ct. App. 1969), in support of his *res judicata* point. That decision by the Arizona Court of Appeals reads in pertinent part:

> Once a federal court upholds a collateral attack on a judgment of conviction following a defendant's first state trial, the decision of the federal court becomes the law of the case. Further proceedings in any later trial based upon the same facts must be in conformity with the habeas corpus decision.

*State v. Cumbo*, 451 P.2d at 337. Even this authority, though, does not aid Ford as neither the federal district court nor the Eighth Circuit Court of Appeals made a specific determination that Ford was ineligible for the death penalty on retrial. Indeed, the federal district court vacated the conviction and gave the State a period of time in which to retry Ford without any express limitation on the penalties to be sought. We find no basis for an application of *res judicata* with regard to the death penalty.

### b.  Double Jeopardy.

Ford's final argument is that the charges against him are barred by the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Article II, § 8 of the Constitution of the State of Arkansas. Yet, he cites no authority from any jurisdiction that has held that reversal of a conviction involving a violation of either *Swain v. Alabama*, 380 U.S. 202 (1965), or *Batson v. Kentucky*, 476 U.S. 79 (1986), entitles him to a complete bar from subsequent prosecution.

■ This court has relied on the general principle announced in the landmark case of *Ball v. United States*, 163 U.S. 662 (1896), that a person who is convicted but has his conviction set aside on appeal may be retried, while the person who is acquitted may not again face jeopardy. *See Timmons v. State*, 290 Ark. 121, 717 S.W.2d 208 (1986).

■ Ford, however, points to *United States v. Dinitz*, 424 U.S. 600 (1976), and similar cases for the proposition that the bad-faith conduct of a prosecutor or other counsel or the judge which provokes a mistrial motion may bar retrial of the defendant. He argues that the systematic and intentional exclusion of African-Americans from the jury falls into this same category of prosecutorial misconduct which triggers double-jeopardy protection, even when a mistrial has not been declared. We discussed the *Dinitz* decision and others in *Timmons v. State, supra*, which involved an improper closing argument by the prosecutor, and concluded:

> Looking to the holdings of *United States v. Jorn, supra*, and *United States v. Dinitz, supra*, and to the cases following the fundamental proposition of *Ball v. United States, supra*, we do not feel compelled to extend the Eighth Circuit Court of Appeals decision in *United States v. Martin, supra*, so as to apply the double jeopardy bar in a case where the appellant's conviction has been overturned on appeal as opposed to mistrial before conviction occurs.

*Timmons*, 290 Ark. 127, 717 S.W.2d at 212. When a *Batson* problem has been determined to exist on appeal in this court, the remedy afforded has been to reverse and remand for a new trial. *See, e.g., Colbert v. State*, 304 Ark. 250, 801 S.W.2d 643 (1990); *Mitchell v. State*, 295 Ark. 341, 750 S.W.2d 936 (1988). *Cf. Cleveland v. State*, 318 Ark. 738, 888 S.W.2d 629 (1994) (gender-based discrimination). We continue to view racial bias in jury selection as a matter that can be corrected by a new trial and not as a circumstance that negates subsequent prosecution.

Writ denied.