Joe E. EDWARDS *v.* STATE of Arkansas

CR 96-10                                    943 S.W.2d 600

Supreme Court of Arkansas
Opinion delivered May 5, 1997
[Petition for rehearing denied June 9, 1997.]

The Perroni Law Firm, P.A., by: *Samuel A. Perroni* and *Patrick R. James*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen. and Senior App. Advocate, for appellee.

ROBERT L. BROWN, Justice. Appellant Joe E. Edwards has filed this interlocutory appeal from the trial court's order denying his motion to dismiss on grounds of double jeopardy, estoppel, and due process. The trial court correctly denied the motion to dismiss, and we affirm.

On March 17, 1995, according to the criminal information filed against him, Edwards abducted his attorney, David Stills. During a subsequent deposition, Detective Steve Parker of the Springdale Police Department testified that on that date, he and Detective Lester Coger of the same department responded to a call that an individual, Steve Summers, had found a man who had been tied up on Cambridge Street in Springdale. The man was David Stills, and he told Summers, according to Detective Parker:

> Joe's gone off the deep end. He's accusing me of having sex with his wife and giving her drugs and said he was going to kill us both and then himself.

When Detective Parker arrived at the scene, he found neck ties and duct tape on the ground next to Summers's car.

On March 20, 1995, Detective Parker signed a Petition to Involuntarily Admit Person with Mental Illness that had been prepared by the Washington County Prosecutor's Office. In the petition, he averred that Edwards should be involuntarily admitted to an appropriate facility for treatment of a mental illness based on the following factual assertion:

> The Respondent kidnapped a victim at gun point, tied the victim up, then picked up his wife at her place of employment and returned her to his residence with the purpose of killing her and the other victim.

Detective Parker stated that Edwards presented a clear and present danger to himself or others as defined by Ark. Code Ann. § 20-47-207(c)(1)-(2) (Repl. 1991).

As a result of the petition, the probate court found that there was probable cause to believe that Edwards presented a potential danger to himself and to others and ordered the Washington County Sheriff to take Edwards to the Ozark Guidance Center for detention and evaluation. As a result of the evaluation, the staff psychiatrist at Ozark Guidance Center determined to a reasonable degree of medical certainty that Edwards's mental and medical condition required immediate hospitalization. On March 27, 1995, after Edwards's counsel waived a hearing on the matter, the probate court entered an order committing Edwards to the Psychiatric Intensive Care Unit at Baptist Medical Center in Little Rock for a period of 30 days. In doing so, the probate court again found that there was probable cause that Edwards suffered from a mental disease and constituted a clear and present danger to himself and to others. On April 25, 1995, the probate court ordered Edwards's commitment extended for an additional 90 days based upon his physicians' determination that he required further treatment for his mental condition.

On July 24, 1995, the date he was scheduled to be released, Edwards was charged by the Washington County prosecutor with kidnapping and terroristic threatening in connection with the abduction of David Stills. The probate court also ordered an extension of his commitment until July 28, 1995, during which time he would be released to the custody of a physician who was

directed to transport him to the Washington County sheriff's office for arraignment on July 27, 1995. Edwards was arraigned on that date.

On September 15, 1995, Edwards moved to dismiss the criminal charges on grounds of double jeopardy, estoppel, and violation of his due process rights. The prosecutor responded that Edwards's counsel actually drafted the orders and solicited the aid of the prosecuting attorney's office for Edwards's continued treatment at Baptist Medical Center. The State further contended that (1) the estoppel theories did not apply because the involuntary admission of a suspect of a crime does not constitute an adjudication of that person's mental capacity to commit crime; and (2) Edwards was not unduly deprived of his liberty for purposes of double jeopardy because there was no "same offense" for former jeopardy and because Edwards's counsel assisted in the orders for treatment at Baptist Medical Center.

A hearing was held on the motion, and following the hearing, the trial court entered an order denying Edwards's motion. In its ruling from the bench, the trial court noted that the civil commitment was not for an "offense," that civil commitment proceedings and criminal proceedings involved different standards and elements and were governed by different statutes, and that the burden of proof for the two proceedings was different.

Edwards filed this interlocutory appeal from the trial court's order.

## I. Double Jeopardy

We first observe that it is well established that an order denying a motion to dismiss based on double-jeopardy considerations is an appealable decision. *Abney v. United States*, 431 U.S. 651 (1977); *Sherman v. State*, 326 Ark. 153, 931 S.W.2d 417 (1996). The essence of Edwards's double-jeopardy argument is that the State has already taken away his liberty by virtue of the civil commitment and now seeks to prosecute him based on the same conduct, which jeopardizes his liberty once more. He directs our attention to both the Arkansas Constitution and the United States Constitution:

> [A]nd no person, for the same offense, shall be twice put in jeopardy of life or liberty[.]

Ark. Const. art. 2, § 8.

> [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb[.]

U.S. Const. amend. 5.

The United States Supreme Court has observed that the Double Jeopardy Clause of the United States Constitution provides several protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense. *United States v. Wilson*, 420 U.S. 332, 339, 95 S.Ct. 1013, 1020, 43 L.Ed.2d 232 (1975).

*Schiro v. Farley*, 510 U.S. 222, 229 (1994). *See also Abney v. United States*, 431 U.S. 651, 661 (1977)("The 'twice put in jeopardy' language of the Constitution thus relates to a potential, *i. e.,* the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried."), *quoting Price v. Georgia*, 398 U.S. 323, 326 (1970).

There is no doubt that civil commitment results in a significant deprivation of liberty that requires due process protection. *Addington v. Texas*, 441 U.S. 418 (1979). *See also Vitek v. Jones*, 445 U.S. 480 (1980); *Honor v. Yamuchi*, 307 Ark. 324, 820 S.W.2d 267 (1991). And we have held that the burden of proof on the State for civil commitments is by clear and convincing evidence. *Shock v. Thomas*, 274 Ark. 493, 625 S.W.2d 521 (1981). Yet, Edwards cites us to no authority, and we know of none, where a jurisdiction has held that double-jeopardy protection attaches to civil commitments. Indeed, authority from other jurisdictions appears to stand for just the opposite proposition.

A seminal case in this area is *State v. Hudson*, 425 A.2d 255 (1981). In *Hudson*, the State sought an involuntary commitment for Hudson, relying in part on evidence of a sexual assault conviction. Hudson argued that because he was already tried on the sexual assault charge, the commitment proceedings were barred under principles of double jeopardy. The Supreme Court of New Hampshire dismissed the argument:

> The defendant misconstrues the nature of the involuntary commitment proceedings. The January 24, 1980, hearing was not held to ascertain the defendant's guilt or innocence concerning the assault or any other charge. Its express and sole purpose was to determine whether the defendant's mental condition was such that he was a danger to himself or others. The mere fact that some of the evidence used to establish the defendant's dangerousness related to an incident for which he had already been tried and convicted does not convert the civil proceeding into a criminal trial.

*State v. Hudson*, 425 A.2d at 258 (citations omitted). *See also Rodrigues v. Gudeman*, 794 F.2d 1458, 1460 n.2 (9th Cir. 1986)("A person committed because he is insane is not being 'punished' for a crime."), *cert. denied*, 479 U.S. 964 (1986); *Hubbart v. Superior Court*, 58 Cal.Rptr.2d 268, 286 (Cal. App. 6 Dist. 1996)("[I]t would be singularly inappropriate to apply double jeopardy provisions to these types of proceedings [commitment under the Sexually Violent Predators Act] where the issue to be determined is not whether respondent committed an act or offense, but whether respondent suffers from a mental condition which makes him dangerous to others."), *quoting People v. Superior Court*, 284 Cal.Rptr. 601, 607 (Cal. App. 2 Dist. 1991); *Matter of Lomax*, 367 A.2d 1272, 1279 (D.C. App. 1976)("A person alleged to be mentally ill is not on trial for having committed an 'offense,' and we do not view civil commitment—aimed basically at treatment for the afflicted individual—as comparable to punishment for the conviction of a crime."), *vacated for other reasons*, 386 A.2d 1185 (D.C. App. 1978); *Matter of Linehan*, 557 N.W.2d 171 (Minn. 1996)(commitment under Sexually Dangerous Persons Act is not "punishment" for purposes of double jeopardy); *People v. Nixon*, 543 N.Y.S.2d 998, 1000 (A.D. 3 Dept. 1989)(stating double jeopardy inapplicable because "the State's objective in confining peti-

tioner is treatment and protection of the public, not punishment or deterrence"); *Matter of Vandenberg*, 617 P.2d 675, 679 (1980)("[A] mental commitment proceeding, though it involves a serious deprivation of liberty, is not a criminal proceeding.").

■ The controlling principle in these cases is that double-jeopardy protection attaches only when a person is put at risk of being punished twice for the same offense. In fact, "same offense" is an element expressly referenced in the Arkansas and U.S. Constitutions. We interpret this language to require successive punishments for the same criminal activity. A civil commitment for evaluation and treatment because the patient may be harmful to himself and others simply does not meet the test of prior punishment for a criminal offense, even when the precipitating event for the commitment is a criminal event. We agree with the reasoning of the New Hampshire Supreme Court in *State v. Hudson, supra*, and affirm the trial court on this point.

## II.    Collateral Estoppel

■ Edwards next complains that the State is collaterally estopped from arguing that he was not mentally ill, and thus capable of formulating criminal intent, on March 17, 1995. It is clear that the Double Jeopardy Clause incorporates the doctrine of collateral estoppel in criminal proceedings, and for that reason we will consider this argument in this interlocutory appeal. *See Schiro v. Farley, supra; Dowling v. United States*, 493 U.S. 342 (1990); *Ashe v. Swenson*, 397 U.S. 436 (1970); *Ford v. Wilson*, 327 Ark. 243, 939 S.W.2d 258 (1997); *Sherman v. State*, 326 Ark. 153, 931 S.W.2d 417 (1996).

■ ■ Generally speaking, collateral estoppel provides "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Schiro v. Farley*, 510 U.S. at 232, *quoting Ashe v. Swenson*, 397 U.S. at 443. This court has required proof of the following elements in order to establish collateral estoppel: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have

been determined by a final and valid judgment; and (4) the determination must have been essential to the judgment. *In re: Estate of Goston v. Ford Motor Co.*, 320 Ark. 699, 898 S.W.2d 471 (1995); *Crockett & Brown, P.A. v. Wilson*, 314 Ark. 578, 864 S.W.2d 244 (1993). For determining the validity of a collateral-estoppel defense to a criminal prosecution, a defendant must also prove: (1) both adjudicatory entities are the same sovereign; and (2) a factual issue essential to the first verdict is an essential element of the second charge. *Sherman v. State, supra; Fariss v. State*, 303 Ark. 541, 798 S.W.2d 103 (1990). Under these tests, we hold Edwards's contention is without merit.

■ The civil commitment statute provides that a person may be committed involuntarily if it is determined that, based upon his conduct, he presents a "clear and present danger to himself or others" and there is a "reasonable probability that such conduct will be repeated if admission is not ordered." Ark. Code Ann. § 20-47-207(c) (Repl. 1991). In the proceeding for a civil commitment, it was determined by the probate judge that Edwards was "mentally ill" because he met these statutory criteria.

■ In contrast, a person may be acquitted for a criminal offense due to mental disease only if he lacked the capacity to form culpable intent according to the dictates of the Arkansas Code:

> It is an affirmative defense to a prosecution that at the time the defendant engaged in the conduct charged, he lacked capacity, as a result of mental disease or defect, to conform his conduct to the requirements of law or to appreciate the criminality of his conduct.

Ark. Code Ann. § 5-2-312(a) (Repl. 1993). Once the State proves the elements of the crime beyond a reasonable doubt, the burden shifts to the defendant to prove the affirmative defense of lack of capacity by a preponderance of the evidence. *Baumgarner v. State*, 316 Ark. 373, 872 S.W.2d 380 (1994); *Phillips v. State*, 314 Ark. 531, 863 S.W.2d 309 (1993); *Mask v. State*, 314 Ark. 25, 858 S.W.2d 1 (1993).

■ It is readily apparent that the issue of Edwards's capacity to form culpable intent at the time of the events for which he has

been charged has yet to be decided. The only issue actually litigated in the civil commitment proceeding was whether Edwards presented a clear and present danger to himself or others—not whether he lacked either the capacity to conform his conduct to the requirements of law or lacked the capacity to appreciate the criminality of his conduct. We do not see the two manifestations of mental illness as being mutually exclusive. Indeed, it appears clear to us that a person may be suicidal and a menace to others but still have the capacity to form criminal intent. Because the two issues, which present differing standards for mental illness, are not the same, we hold that the State is not collaterally estopped from contending that Edwards had the capacity to form the requisite criminal intent on March 17, 1995.

We are quick to recognize that this is an area that could in some circumstances lend itself to prosecutorial misconduct. Using civil commitments to take a person off the streets without just cause comes to mind as a potential abuse. Here, though, the probate court found Edwards to be a danger to himself and others and he was committed for evaluation and treatment, first for 30 days and then for an additional 90 days. We see nothing nefarious in the State's conduct in this particular case.

### III.   Other Arguments

Edwards also raises arguments of equitable estoppel, judicial estoppel, and violation of his due-process rights in this interlocutory appeal. These arguments are premature. An interlocutory appeal is available in this situation only to protect against a person's being placed twice in jeopardy for the same criminal offense. Issues pertaining to equitable estoppel, judicial estoppel, and due process do not warrant the protection of an interlocutory appeal, as does a double-jeopardy argument, and may be considered on direct appeal, if necessary.

Affirmed.