Darrel Wayne HILL *v.* STATE of Arkansas

CR 96-33 962 S.W.2d 762

Supreme Court of Arkansas
Opinion delivered February 5, 1998
[Petition for rehearing denied March 12, 1998.]

*Montgomery, Adams & Wyatt, PLLC*, by: *Dale E. Adams*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Darrel Wayne Hill, appeals the judgment of the Montgomery County Circuit Court resentencing him for one count of capital murder and one count

of attempted capital murder. Appellant was tried by a jury and received the death penalty for the 1980 shooting of Donald Teague and E.L. Ward. This court affirmed. *Hill v. State*, 275 Ark. 71, 628 S.W.2d 284 (1982). This court later affirmed the denial of postconviction relief pursuant to Arkansas Rules of Criminal Procedure Rule 37. *Hill v. State*, 278 Ark. 194, 644 S.W.2d 282 (1983). Appellant filed a petition for habeas corpus in federal court, where relief was granted in 1993. *Hill v. Lockhart*, 824 F. Supp. 1327 (E.D. Ark. 1993). The State appealed to the Eighth Circuit Court of Appeals, which affirmed. *Hill v. Lockhart*, 28 F.3d 832 (8th Cir. 1994). Appellant was granted a resentencing hearing, where after the jury found four aggravating circumstances, and no mitigating circumstances, the jury again sentenced him to death. Jurisdiction is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(2). Appellant asserts six points for reversal. We affirm.

## I. Mitigating Circumstances

Appellant's first assignment of error in the penalty phase is a challenge to the jury's failure to find any mitigating circumstances. The record reflects that the jury was required to consider three forms when deciding upon the aggravating and mitigating factors before reaching a verdict. The first form dealt with aggravating circumstances. The four-part second form dealt with mitigating circumstances: Subsection (a) listed the mitigating circumstances to be checked only if the jury unanimously agreed that they existed; subsection (b) was checked if some of the jury believed a circumstance existed, but not all of the jury agreed; subsection (c) was a list of circumstances of which there was some evidence, but no member of the jury believed the circumstance existed; and subsection (d) was checked only if the jury concluded that there was no evidence of mitigating circumstances. The third form was a conclusions form with three written findings that are required in order to impose the death penalty.

During the resentencing trial, the State called one witness, E.L. Ward, who testified about the incident where he was shot and saw Appellant shoot and kill Donald Teague. Appellant provided several witnesses to testify that he had changed and had become a

productive person in prison. Appellant argues that, at a minimum, the jury should have at least found that there was evidence of mitigating circumstances, even if they agreed unanimously that it did not exist. Appellant argues that turning one's life around in prison is a mitigating circumstance recognized by the United States Supreme Court in *Skipper v. South Carolina*, 476 U.S. 1 (1986). Relying upon *Giles v. State*, 261 Ark. 413, 549 S.W.2d 479, *cert. denied*, 434 U.S. 894 (1977), Appellant contends that the jury was not free to arbitrarily disregard reasonable testimony, where other testimony is supportive, and no questions of credibility are to be resolved. Appellant argues that the jury showed that it did not consider the evidence by checking that part of the form stating that it found no evidence of mitigation.

The State responds by relying on *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996), *cert. denied*, 117 S. Ct. 1853 (1997), and *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995), *cert. denied*, 116 S. Ct. 1861 (1996), to show that there was a credibility issue as a result of the State's cross-examination, and that the jury did not have to believe Appellant's witnesses. The State argues that even though Appellant could have changed his life in prison, the jury still could have concluded that this change was not a mitigating factor in his crime. We agree.

■ This court has previously held that "[a] jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance." *Bowen*, 322 Ark. at 497, 911 S.W.2d at 561 (citing *Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987), and *Hill v. State*, 289 Ark. 387, 713 S.W.2d 233 (1986), *cert. denied*, 479 U.S. 1101, and *cert. denied*, 484 U.S. 873 (1987)). This court held further that the jury alone determines what weight to give the evidence, and may reject it or accept all or any part of it the jurors believe to be true. *Id.* (citing *Davasher v. State*, 308 Ark. 154, 823 S.W.2d 863, *cert. denied*, 112 S. Ct. 2948 (1992), and *Robertson v. State*, 304 Ark. 332, 802 S.W.2d 920 (1991)).

■ ■ In *Echols*, 326 Ark. 917, 942-43, 936 S.W.2d 509, 520, this court stated:

> [O]ur holdings provide that a jury may generally refuse to believe a defendant's mitigating evidence, but when there is no question about credibility and, when, in addition, objective proof makes a reasonable conclusion inescapable, the jury cannot arbitrarily disregard that proof and refuse to reach that conclusion. Here the jury was faced with neither indisputable credibility nor objective proof that made a reasonable conclusion inescapable. To the contrary, there was substantial evidence of Echols's history of prior criminal activity.

In that case, the jury found that the codefendant Jason Baldwin had no significant history of criminal activity, but refused to make the same finding for Echols. This court held that such a finding by the jury indicated that the jury carefully weighed the evidence and determined that Echols should not be credited with this mitigating factor. Here, the fact that after consideration, the jury did not regard Appellant's change as a mitigating factor was not an error, as the jury was free to believe or disbelieve Appellant's witness.

█ Furthermore, assuming *arguendo* that it was error for the jury to disregard Appellant's evidence of mitigation, such error would clearly be harmless due to the fact that the jury unanimously found that four aggravating circumstances existed, that they outweighed beyond a reasonable doubt any mitigating circumstances found by any juror to exist, and that the aggravating circumstances justified beyond a reasonable doubt a sentence of death. *Jones v. State*, 329 Ark. 62, 947 S.W.2d 339 (1997). Relying on the holding in *Wainwright v. State*, 302 Ark. 371, 790 S.W.2d 420 (1990), *cert. denied*, 499 U.S. 913 (1991), we held in *Jones*, that "[b]ecause the jury specifically found that five aggravators outweighed beyond a reasonable doubt any mitigating circumstances found by any juror to exist, we conclude that any inconsistencies by the jury in the completing of subsections (b) and (c) of Form Two were harmless error." *Id.* at 72-73, 947 S.W.2d at 344.

Here, the jury found that four aggravating circumstances existed beyond a reasonable doubt: (1) that the defendant previously committed another felony, an element of which was the use or threat of violence to another person or creating a substantial

risk of death or serious physical injury to another person; (2) that the defendant knowingly created a great risk of death to a person other than the victim; (3) that the defendant committed the capital murder for the purpose of avoiding or preventing an arrest; and (4) that the defendant committed the capital murder for pecuniary gain. The jury did not, however, find any mitigating factors. This court has previously conducted a harmless-error analysis when the jury has made an error regarding mitigating circumstances although no error was made by the jury regarding aggravating circumstances. *Jones*, 329 Ark. at 71, 947 S.W.2d at 344. Even if we were to assume that some of the jurors did conclude that the evidence of Appellant's change constituted a mitigating circumstance, it is clear that the jury unanimously concluded that four aggravating circumstances existed, and that these aggravators outweighed beyond a reasonable doubt any mitigating circumstances found by any juror to exist. Nothing in the forms indicated to the jury that a mitigating circumstance must have been found unanimously before it could be considered in the weighing process. *See Pickens v. State*, 301 Ark. 244, 783 S.W.2d 341, *cert. denied*, 497 U.S. 1011 (1990), and *cert. denied*, 500 U.S. 929 (1991). Additionally, the jury found that the aggravating circumstances justified beyond a reasonable doubt a sentence of death. Moreover, the jury was instructed that, only after it had carefully considered these three statutory findings on the conclusions form, it shall sentence Appellant to death. Each juror signed the verdict form sentencing Appellant to death, and each juror indicated orally that he or she had voted for the death penalty.

## II. Double Jeopardy/Collateral Estoppel

Appellant asserts that because the first jury did not find that the aggravating factor of pecuniary gain existed, the State was precluded by double jeopardy and collateral estoppel from seeking the death penalty based on that aggravating factor in the resentencing. Appellant relies on *Bullington v. Missouri*, 451 U.S. 430 (1981), to support his argument. His reliance is misplaced, however, because the facts present in *Bullington* are distinguishable from those of the present case.

In *Bullington*, the Court was faced with the issue of whether a criminal defendant who had been acquitted of the death penalty under a bifurcated sentencing proceeding and had his conviction reversed on appeal could then be found guilty on retrial and sentenced to death under the same bifurcated sentencing scheme consistent with the double-jeopardy clause of the Fifth and Fourteenth Amendments. The Court noted that Missouri criminal procedure required the state to prove additional facts beyond a reasonable doubt in a separate proceeding in order to justify the sentence, and that because Bullington had been acquitted of the death penalty in such a proceeding in the original trial, he could not again be exposed to a sentence for which he had been acquitted.

Here, Appellant has not had a jury find him innocent of the death penalty. To the contrary, Appellant was sentenced to death during the first trial. *See Ford v. Wilson*, 327 Ark. 243, 939 S.W.2d 258 (1997). Appellant even concedes that *res judicata* is not applicable as the State is not precluded from seeking the death penalty again. Nonetheless, Appellant asserts that the doctrine of collateral estoppel is applicable, as this case involves the relitigation of a particular issue.

In *Fletcher v. State*, 318 Ark. 298, 884 S.W.2d 623 (1994), we acknowledged that the United States Supreme Court had accorded constitutional dimensions to collateral estoppel by incorporating it into the Fifth Amendment bar against double jeopardy. *See Ashe v. Swenson*, 397 U.S. 436 (1970). Collateral estoppel provides that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Edwards v. State*, 328 Ark. 394, 943 S.W.2d 600 (1997). This court has required proof of the following elements in order to establish collateral estoppel: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a final and valid judgment; and (4) the determination must have been essential to the judgment. *Id.*

 Here, the determination by the first jury disregarding pecuniary gain was not essential to the judgment for the death penalty. The finding of an aggravating circumstance is not a separate verdict but is a "standard" to guide the jury in its selection of punishment. *Poland v. Arizona*, 476 U.S. 147 (1986). The failure to find any particular aggravating factor does not preclude the death penalty or "acquit" a defendant. *Id.* at 156. While the first jury may have rejected the pecuniary gain aggravator, it did not acquit Appellant. Therefore the second jury could consider that factor. We further agree with the State that even if the jury in this case wrongly considered the pecuniary gain aggravator, Appellant is not entitled to a resentencing. Under Ark. Code Ann. § 5-4-603(d) (Repl. 1997), this court conducts a harmless-error review if the jury finds no mitigating factors. This section provides:

> (d) On appellate review of a death sentence, if the Arkansas Supreme Court finds that the jury erred in finding the existence of any aggravating circumstance or circumstances for any reason and if the jury found no mitigating circumstances, the Arkansas Supreme Court shall conduct a harmless error review of the defendant's death sentence. The Arkansas Supreme Court shall conduct this harmless error review by:
>
> (1) Determining that the remaining aggravating circumstance or circumstances exist beyond a reasonable doubt; and
>
> (2) Determining that the remaining aggravating circumstance or circumstances justify a sentence of death beyond a reasonable doubt.

Thus, even if the jury should not have considered the pecuniary gain factor, it found three other aggravating factors existed beyond a reasonable doubt to support its verdict.

### III. Cruel and Unusual Punishment

 Appellant asserts that it is cruel and unusual punishment to sentence him to death after sitting on death row for over fifteen years, especially when the delay cannot be attributed to him. Recently in *Echols*, 326 Ark. at 982, 936 S.W.2d at 543, we rejected the defendant's argument that the death penalty itself was cruel and unusual punishment and stated that both this court and the United States Supreme Court have held that the death penalty is not cruel and unusual punishment. *Pulley v. Harris*, 465 U.S. 37

(1984); *Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993); *Henderson v. State*, 311 Ark. 398, 844 S.W.2d 360 (1993).

The United States Supreme Court has held that it is a mandatory safeguard of the Eighth Amendment for the sentencing body to be allowed to consider any mitigating factor that is relevant to the particular offender's case. *California v. Brown*, 479 U.S. 538 (1987). In the present case, the defense was allowed during the sentencing phase to introduce any relevant mitigating evidence concerning the character or history of the offender or the circumstances of the offense. Appellant argues that the testimony of his witnesses revealed how he had changed and had a positive effect on the people around him on death row.

Appellant relies on *State v. Richmond*, 886 P.2d 1329 (Ariz. 1994), for his contention that the length of time waiting to be executed is cruel and unusual because it is equivalent to "torture" and "lingering death" within the meaning of prohibited punishment found in *In re Kemmler*, 136 U.S. 436 (1890). The *Richmond* case involved a man who had been on death row for over twenty years. The Supreme Court of Arizona reduced his sentence to life in prison after reweighing the aggravating and mitigating factors in his case. Appellant refers to the cited authority of reviews and books in *Richmond* as evidence that long-term· confinement on death row causes psychological pain. *Richmond*, 886 P.2d at 1333.

We find it significant that the testimony presented in this case did not reveal any prejudice or psychological pain that Appellant now implies he suffers as a result of the delay. *See Janecka v. State*, 937 S.W.2d 456, 475-76 (Tx. Crim. App. 1996), *cert. denied*, 118 S. Ct. 86 (1997). We agree with the State's characterization that the very nature of capital litigation in both state and federal courts suggests that delay in resentencing to death is the product of evolving standards of decency which inures to the defendant's benefit. *See White v. Johnson*, 79 F.3d 432 (5th Cir. 1996), *cert. denied*, 117 S. Ct. 275 (1997); *McKenzie v. Day*, 57 F.3d 1493 (9th Cir.), *cert. denied*, 514 U.S. 1104 (1995). In sum, we know of no reason why we should now hold that the imposition of the death penalty is cruel and unusual punishment merely

because there has been an extended passage of time between the crime and the punishment.

### IV. Change of Venue

Appellant argues that the trial court abused its discretion in denying his motion for change of venue. Appellant filed a motion to change the venue in the original case, and the denial was affirmed on appeal. *Hill v. State*, 275 Ark. 71, 628 S.W.2d 284 (1982); *Hill v. Lockhart*, 28 F.3d 832. In the resentencing, Appellant was to be resentenced according to Arkansas law. Arkansas Code Annotated § 5-4-616(a)(1) (Repl. 1997) provides that if the appellate court finds error in the sentencing, it may set aside the sentence of death and remand the case to the trial court in the jurisdiction in which the defendant was originally sentenced. Also, this court has not viewed a vacating or voiding of a state conviction for trial error as allowing a defendant freedom from the criminal charge or proper determinations of venue. *Ford*, 327 Ark. 243, 939 S.W.2d 258. Initiating a retrial places the defendant in the same position as he was in before the trial began. *See Ford v. Norris*, 67 F.3d 162 (8th Cir. 1995).

In *Bell v. State*, 324 Ark. 258, 920 S.W.2d 821 (1996), Bell argued that the fact that a number of the veniremen were excused because they could not be impartial was reason to conclude a fair trial could not be obtained. The trial court, however, emphasized that the chief reason why the remaining veniremen were excused from duty was because of their beliefs regarding the death penalty, not pretrial publicity. This court held that *voir dire* of the jury provides adequate safeguards against pretrial publicity, and there can be no error in the denial of a change of venue if an examination of the jury selection shows that an impartial jury was selected and that each juror stated that he or she could give the defendant a fair trial and follow the instructions of the court.

A motion for a change of venue is not subject to reversal except for an abuse of discretion. *Hill*, 275 Ark. 71, 628 S.W.2d 284. Here, twelve jurors were seated who indicated they could make an impartial decision based solely on the evidence. We agree with the State that even if the jurors were not qualified to sit, Appellant was not forced to exhaust all of his peremptory

challenges to try to secure a fair and impartial jury. Appellant did not demonstrate sufficient prejudice and waived any objection after concurring in the makeup of the jury. There was no error by the trial court in denying the motion for a change of venue.

## V. Pretrial Statement

Appellant contends that the failure of the State to provide a statement of its primary witness, E.L. Ward, constitutes reversible error. Pursuant to Ark. Code Ann. § 16-89-115 (1987), the State must furnish a copy of a signed statement or a taped statement made to an agent of the State to the defense after the witness has testified. It is clear that the State provided information received from Ward to Appellant's former defense counsel for use in the first trial where Ward also testified. Subsequently, the verdict was "supported by overwhelming evidence of guilt." *Hill,* 275 Ark. at 79, 628 S.W.2d at 288.

The State was unable to provide this purported statement given by Ward to Appellant for the second time. While Appellant made a motion for mistrial and a motion to strike Ward's testimony, Appellant did not request a continuance to locate the purported statement, and Appellant did not call any witnesses to dispute Ward's testimony. Furthermore, counsel for Appellant admitted at the resentencing that he had not had a chance to see or talk to Ward before the hearing. The record reflects that the State provided witnesses' addresses to Appellant before the hearing.

Under section 5-4-616, all exhibits, admitted evidence, and transcripts of the testimony of the previous trial are admissible in the resentencing. This statute was complied with as the State provided the record of the first trial to the defense. There was no previous statement made by Ward admitted into evidence in the first trial. Appellant argues that there was no record made in the first trial about the purported statement as the trial court did not allow cross-examination of Ward on this subject. The State argued below that the record in the first trial revealed that defense counsel's cross-examination of Ward, which was objected to and sustained by the trial court, was in regard to the identification of Appellant. There is no question in the resentencing hearing that

Appellant was identified as having committed the crimes. The resentencing was for the purpose of establishing the aggravating and mitigating factors and sentencing Appellant accordingly.

 If it was error, it was harmless for several reasons. In keeping with *Rush v. State*, 252 Ark. 814, 481 S.W.2d 696 (1972), the trial court made an inquiry as to the whereabouts of the purported statement. The trial court inquired of the State as to whether any diligent effort had been made to locate the information. The State had complied with section 16-89-115 by providing the purported statement to defense counsel at the first trial. This section does not compel a continuing obligation for the State to produce the documents. Appellant did not request a continuance in order to obtain the information from the former defense counsel. Appellant did not call any witnesses to refute Ward's testimony. Appellant has not demonstrated any prejudice through any inconsistency of Ward's testimony, nor has he shown whether the purported statement was a signed written statement or a taped statement made to an agent of the State as required by the definition of "statement" in section 16-89-115 before the State must provide it to defense counsel. The information provided by the State in the first trial could have been a mere oral statement made to police. The State put on the best evidence with the direct testimony of Ward and the purported statement was not found after diligent efforts to locate it. Appellant's guilt had been established before this hearing and any error was harmless.

### VI. Right of Allocution

Appellant argues that the trial court should have granted him the right of allocution before the jury had begun to deliberate on his sentence. We disagree.

 Arkansas Code Annotated § 16-90-106(b) (1987) provides that the accused, upon sentencing, shall have an opportunity to show any cause why sentence should not be pronounced. The total failure to afford a convicted defendant the right to state any legal reason why judgment should not be pronounced is reversible error. *Neff v. State*, 287 Ark. 88, 696 S.W.2d 736 (1985). When raised on direct appeal after a proper objection in the trial court, the statute is satisfied if the court affords the

defendant his right of allocution at the time judgment is pronounced. *Id.* As Appellant was invited to speak during the sentencing proceeding, he suffered no prejudice. Upon a review of the entire sentencing procedure, we are of the view that no prejudicial error as to allocution has been demonstrated.

## VII. Rule 4-3(h)

The transcript of the record in this case has been reviewed in accordance with Arkansas Supreme Court Rule 4-3(h), which requires, in cases in which there is a sentence of life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a) (1987). No errors have been found.

Affirmed.