Kathleen M. VELEK; Timothy P. Cotton; Carolyn J. Mcewen; and Parties Similarly Situated Plaintiffs

v.

State of ARKANSAS; City of Little Rock, Arkansas; Judge Victor A. Fleming, Little Rock Municipal Judge; City of Stuttgart, Arkansas; and Judge J.W. Green, Stuttgart Municipal Judge Defendants

No. 4:00CV00929 SMR.

United States District Court,
E.D. Arkansas,
Western Division.

Feb. 6, 2001.

William J. Velek, Greenbrier, AR, for plaintiffs.

Sherri L. Robinson, Arkansas Attorney General's Office, Little Rock, AR, for State of Arkansas.

William C. Mann, III, Little Rock City Attorney's Office, Little Rock, AR, for City of Arkansas and Victor A. Fleming.

Jeannette Denham, Arkansas Municipal League, North Little Rock, AR, for City of Stuttgart Arkansas and J. W. Green.

## ORDER

STEPHEN M. REASONER, District Judge.

Presently before the Court is a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction (Doc. No. 10) filed by Plaintiff Timothy P. Cotton (Mr. Cotton). For the following reasons, the motion is denied in its entirety.

■ First, Plaintiff failed to file a brief accompanying the present motion as required by Local Rule 7.2(e): "Pretrial motions for temporary restraining orders, motions for preliminary injunctions, and motions to dismiss, shall not be taken up and considered unless set forth in a separate pleading accompanied by a separate brief." Local Rule 7.2(e). For this reason alone, the Court is justified in denying Mr. Cotton's motion.

■ Second, the Court denies the Motion for TRO because the issuance of an ex parte TRO without notice to other parties is not required in this case. Under Rule 65(b) of the Federal Rules of Civil Procedure, a TRO may issue without notice to the adverse party only if:

(1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and

(2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed.R.Civ.P. 65(b). Mr. Cotton has failed to show the Court why an immediate ex parte temporary restraining order should issue when his scheduled non-jury trial date in municipal court is on February 21, 2001.

Third, Mr. Cotton's Motion for Preliminary Injunction, filed pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, is denied as evaluated herein under the framework established in *Dataphase Sys., Inc. v. CL Sys. Inc.,* 640 F.2d 109 (8th Cir.1981) and its progeny.

## I. Facts

Plaintiffs face criminal prosecution in the Municipal Courts of the City of Stuttgart and the City of Little Rock for misdemeanor offenses punishable in excess of six months. The present motion is brought on behalf of Plaintiff Timothy P. Cotton ("Mr. Cotton"), who is currently scheduled for a non-jury trial before Separate Defendant Judge J.W. Green ("Judge Green") in Stuttgart Municipal Court on February 21, 2001. Mr. Cotton was charged with "Domestic Battery Third Degree" and "Public Intoxication" and he could be sentenced to one year in jail.

Plaintiffs have brought the present action under 42 U.S.C. § 1983, asserting that the two-tiered system in Arkansas for Class A misdemeanor offenses is unconstitutional. In Arkansas, a criminal defendant charged in municipal court with a misdemeanor offense can only exercise his right to a jury trial by electing to appeal to circuit court after a conviction in municipal court. *See* Ark.Code. Ann §§ 16–17–703; 16–17–801 *et seq.* (Michie 1999); *see also State v. Roberts,* 321 Ark. 31, 34, 900 S.W.2d 175, 176 (1995). Plaintiffs assert that this system violates their Sixth Amendment right to trial by jury, because it requires that criminal defendants charged with said offenses must first be adjudicated in a municipal court without a jury, after which they can appeal to circuit court for trial by jury de novo. Mr. Cotton has brought the present motion seeking injunctive relief to postpone his scheduled non-jury trial in municipal court on February 21, 2001.

## II. Preliminary Injunction

■ In the Eighth Circuit, the issuance of a preliminary injunction is governed by *Dataphase Sys., Inc. v. CL Sys. Inc.,* 640 F.2d 109 (8th Cir.1981) and its progeny. Under *Dataphase,* whether or not a preliminary injunction should issue involves the consideration of four factors:

(1) the threat of irreparable harm to the movant;

(2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant;

(3) the probability that the movant will succeed on the merits; and

(4) the public interest.

See *Dataphase*, 640 F.2d at 114 (referred to herein as the *Dataphase* factors). A district court's denial of injunctive relief will not be reversed on appeal unless it is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise. *See Modern Computer Sys. v. Modern Banking Sys.*, 871 F.2d 734, 737 (8th Cir.1989) (en banc). In essence, the inquiry is an equitable one, requiring the district court to consider "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113 (footnote omitted). Moreover, "no single factor is determinative" in this inquiry, and these factors are not a rigid formula. *See id.; Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir.1999).

### A. *Irreparable Harm*

■ In any case considering the *Dataphase* factors, "[t]he threshold inquiry is whether the movant has shown the threat of irreparable injury." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987). "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir.1999) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). "Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm." *Id.; Adam–Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir.1996) ("[T]he failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction.") (quoting *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987)). An adequate showing of "irreparable harm" cannot be something that has never been the focus of the underlying lawsuit. *See United States v. Green Acres Enters., Inc.*, 86 F.3d 130, 133 (8th Cir.1996). A sufficient showing on this factor can be made, for example, by showing that the movant has no adequate remedy at law. *See Baker Elec. Cooperative, Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). Conversely, where the movant has an adequate legal remedy, a preliminary injunc-

tion will not issue. *See Frank B. Hall & Co. v. Alexander & Alexander, Inc.*, 974 F.2d 1020, 1025 (8th Cir.1992).

■ In the present case, Mr. Cotton faces no irreparable harm. The United States Supreme Court has stated in relation to the two-tier system that it "is not oblivious to the adverse psychological and physical effects that delay in obtaining the final adjudication of one's guilt or innocence may engender." *See Ludwig v. Massachusetts*, 427 U.S. 618, 628, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976). However, the Court found that such reasons were insufficient to find the scheme unconstitutional. *See id.* Mr. Cotton asserts in the present motion that the irreparable harm he would suffer includes (1) damage to his reputation, (2) trauma, and (3) marital disharmony. While the Court echos the sentiments of the United States Supreme Court in *Ludwig*, Mr. Cotton has failed to convince the Court that he will suffer irreparable harm by facing prosecution in municipal court under the Arkansas two-tier scheme.

### B. *Likelihood of Success*

In considering the likelihood that Mr. Cotton will prevail on the merits, the Court notes that it is not deciding whether he "will ultimately win." *See Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir.1991); *see also O'Connor v. Peru State College*, 728 F.2d 1001, 1002 (8th Cir. 1984) ("The proceedings are at an early stage and to prejudge the evidence before it is fully collated and demonstrated is basically unfair. Under these circumstances, the court should avoid deciding with any degree of certainty who will succeed or not succeed."). "[A]djudication of a motion for a preliminary injunction is not a decision on the merits of the underlying case." *Hubbard Feeds v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir.1999). Indeed, "[t]he standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that to obtain a permanent injunction the movant must attain success on the merits." *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir.1999) (citing *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)).

In contrast, "[a]t the early stage of a preliminary injunction motion, the speculative nature of this particular ['likelihood of success'] inquiry militates against any wooden or mathematical application of the test. Instead, a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir.1998) (internal citations and quotation marks omitted). "Likelihood of success on the merits requires that the movant find support for its position in governing law. In order to weigh in the movant's favor, the movant's success on the merits must be 'at least ... sufficiently likely to support the kind of relief it requests.'" *Curtis 1000, Inc. v. Youngblade*, 878 F.Supp. 1224, 1247 (N.D.Iowa 1995) (citations omitted). The Court has found no support for Mr. Cotton's position, and the position of all Plaintiffs in the present case, in the governing law.

In *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the United States Supreme Court "held that the Sixth Amendment, as applied to the States through the Fourteenth, requires that defendants accused of serious crimes be afforded the right to trial by jury." *See Baldwin v. New York*, 399 U.S. 66, 68, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970) (citing *Duncan*, 391 U.S at 159, 88 S.Ct. 1444). The Court also "reaffirmed the long-standing view that so-called 'petty offenses' may be tried without a jury." *Id.* In *Baldwin*, the Court drew a line between "serious crimes" and "petty offenses" holding that no offense can be deemed "petty" for purposes of the right to trial by jury where imprisonment for more than six months, or a fine of more than five hundred dollars, is authorized. *See Baldwin*, 399 U.S. at 69–70, 90 S.Ct. 1886.

Under Arkansas law, a criminal defendant has a right to a jury trial in circuit court. *See* Ark. Const. art. 2, § 7; Ark.Code Ann. §§ 16–89–107(b)(1) and 16–96–111(a); *see also State v. Webb*, 323 Ark. 80, 87, 913 S.W.2d 259, 263 (1996); *Harrell v. City of Conway*, 296 Ark. 247, 249, 753 S.W.2d 542, 543 (1988); *Johnston v. City of Pine Bluff*, 258 Ark. 346, 525 S.W.2d 76 (1975). However, there is no "entitlement to a jury trial in a municipal court, but the right remains inviolate when an appeal is pursued to a circuit court where the case is tried de novo." *State v. Roberts*, 321 Ark. 31, 34, 900 S.W.2d 175, 176 (1995) (citing Ark.Code Ann § 16–17–703; *Edwards v. City of Conway*, 300 Ark. 135, 777 S.W.2d 583 (1989)). "There is thus a 'two-tier' system for an accused misdemeanant who wishes a jury trial." *Webb*, 323 Ark. at 87, 913 S.W.2d at 263.

The two-tier system of providing a trial by jury has been upheld by the United States Supreme Court and the Arkansas Supreme Court. *See Webb*, 323 Ark. at 88, 913 S.W.2d at 263–64 (citing *Ludwig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976); *State v. Roberts*, 321 Ark. 31, 900 S.W.2d 175 (1995)). In *Ludwig*, the United States Supreme Court considered the constitutionality of a very similar two-tier statutory scheme for misdemeanor offenses in Massachusetts. *See Ludwig v. Massachusetts*, 427 U.S. 618, 618–19, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976). The Court examined whether such a scheme unconstitutionally burdens the exercise of the right to a jury trial "(1) by imposing the financial cost of an additional trial; (2) by subjecting an accused to a potentially harsher sentence if he seeks a trial de novo in the second tier, and (3) by imposing the increased psychological and physical hardships of two trials." *See Ludwig*, 427 U.S. at 626, 96 S.Ct. 2781. The Court concluded the scheme did not unconstitutionally burden the right to a jury trial. *See id.* at 630, 96 S.Ct. 2781. First, the Court found that the financial burdens of the accused twice defending himself and losing any wages, if he is employed, "do not impose an unconstitutional burden on the exercise of the right to a trial by jury." *Id.* at 626, 96 S.Ct. 2781. Second, the Court concluded that the possibility of a harsher sentence at the second tier does not impermissibly burden the exercise of an accused's right to a trial by jury. *See id.* at 627, 96 S.Ct. 2781. Finally, the Court found that there was no evidence that the Massachusetts scheme imposed any greater delay, resulting in increased psychological or physical hardships, than there would be if it abandoned its two-tier system. *See id.* at 629, 96 S.Ct. 2781.

In closing, the Court stated "[t]he modes of exercising federal constitutional rights have traditionally been left, within limits, to state specification. In this case, Massachusetts absolutely guarantees trial by jury to persons accused of serious crimes, and the manner it has specified for exercising this right is fair and not unduly burdensome." *Id.* at 630, 96 S.Ct. 2781.

Similarly, in *State v. Roberts,* 321 Ark. 31, 900 S.W.2d 175 (1995), the Arkansas Supreme Court held that the two-tier Arkansas scheme was constitutional under the Arkansas Constitution. In *Roberts,* the defendants were charged with misdemeanor offenses in municipal court and they petitioned the circuit court for a writ of mandamus. *See Roberts,* 321 Ark. at 33, 900 S.W.2d at 175. The defendants argued that being forced to participate in a municipal court proceeding without a jury before obtaining access to a jury under Arkansas law violated their right to a jury trial under the Arkansas Constitution. *See id.,* 900 S.W.2d at 175. The circuit court granted the petition and the Arkansas Supreme Court reversed. *See id.* at 34–35, 900 S.W.2d at 176–77. The court stated the following:

> No matter how laudable his intention, it was simply unnecessary for the Circuit Court to institute a means contrary to the present statutory scheme to protect the right to jury trial. The underpinnings of the order were that the proceeding which must occur in a municipal court prior to that in a circuit court where a jury is available places an impermissible burden on the right to a jury trial and that a criminal defendant has the *right to decide* whether to be tried by a jury. We agree with the holding in *Ludwig v. Massachusetts, supra,* that the burden placed upon the right by requiring a proceeding in a municipal court is not impermissible. We have no quarrel with the conclusion that a criminal defendant has a right to be tried by a jury, but as we and the General Assembly have made clear, the inviolability of that right is sufficiently protected by the right to take the case to a circuit court. Persons summoned before a municipal court have an adequate remedy to protect their statutory and constitutional right to a trial by jury, thus mandamus does not lie.

*Roberts,* 321 Ark. at 35, 900 S.W.2d at 176–77.

In *State v. Webb,* 323 Ark. 80, 913 S.W.2d 259 (1996), the Arkansas Supreme Court again affirmed the constitutionality of the Arkansas two-tier system. As in *Roberts,* the defendants in *Webb,* who faced statutory misdemeanor charges in municipal court, petitioned the circuit court for a writ of prohibition, which that court granted. *See Webb,* 323 Ark. at 82, 913 S.W.2d at 260. The circuit court judge noted "the problems of *extra costs* in a second trial, the *extra effort* to which a defendant has to expend to obtain a trial by jury in a circuit court after conviction in a municipal court, and the *possible embarrassment* to be suffered by one who pleads guilty in a municipal court just to expedite obtaining the right to a jury trial in a circuit court." *See id.* at 87, 913 S.W.2d at 263 (emphasis added). Again, the Arkansas Supreme Court reversed, stating "[t]he arguments being made in this case have been considered." *See id.,* 913 S.W.2d at 264. "The two-tier system of providing a trial by jury for accused misdemeanants has withstood constitutional scrutiny in both the United States Supreme Court, and this Court." *Id.,* 913 S.W.2d at 263.

Moreover, an appeal from municipal court to circuit court "must be properly perfected" under Arkansas law. *See Edwards,* 300 Ark. at 138, 777 S.W.2d at 584 (holding that a circuit court has no authority to accept untimely appeals). Rule 9(a) of the Arkansas Inferior Court Rules requires an appeal to be filed within thirty (30) days. *See* Ark. Inferior Ct. R. 9(a). While Rule 9 specifically refers only to civil cases, the Arkansas Supreme Court has consistently held that it equally applies to criminal cases. *See Edwards,* 300 Ark. at 136–37, 777 S.W.2d at 583–84; *see also Laxton v. State,* 49 Ark. App. 148, 899 S.W.2d 479 (1995); *Allred v. State,* 310 Ark. 476, 837 S.W.2d 469 (1992); *Bocksnick v. City of London,* 308 Ark. 599, 825 S.W.2d 267 (1992). Moreover, the court has held that compliance with Rule 9 is mandatory and jurisdictional. *See Hawkins v. City of Prairie Grove,* 316 Ark. 150, 871 S.W.2d 357 (1994).

However, Plaintiffs argue that their right to a jury trial is burdened by being required to pay a fee in circuit court in order to appeal a conviction in municipal court. The Court disagrees. Rule 9(b) of the Arkansas Inferior Court Rules provides how an appeal shall be taken from municipal court to circuit court in Arkansas:

> An appeal from an inferior court to the circuit court shall be taken by filing a record of the proceedings had in the inferior court. It shall be the duty of the clerk to prepare and certify such record when requested by the appellant *and upon payment of any fees authorized by law therefor*. The appellant shall have the responsibility of filing such record in the office of the circuit clerk.

Ark. Inferior Ct. R. 9(a) (emphasis added).

Therefore, because the Arkansas Supreme Court has held that Rule 9 equally applies in criminal cases, and because of the reasons stated in the previously discussed authority, this Court finds that Plaintiffs likelihood of succeeding on the merits in this case in minimal at best.

## C. *Remaining Two Factors*

Finally, the Court must consider the other two *Dataphase* factors—the balance between the irreparable harm to Plaintiffs and the harm that a preliminary injunction would cause to other parties, and the public interest. *See Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 372 (8th Cir. 1991). The Court finds that these two factors also do not benefit Mr. Cotton. At best, these factors are neutral in the present case. More likely, however, the harm to other parties and the public interest concerns outweigh Mr. Cotton's interest in obtaining a preliminary injunction.

## III. *Conclusion*

For the reasons stated, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction is denied in its entirety.